**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James J. O'NEILL et al., Defendants-
Appellants.**

**No. 73–2124.**

United States Court of Appeals,
Sixth Circuit.

Decided May 31, 1974.

---

**1022**

---

Reuben M. Payne, Sindell, Sindell, Bourne, Stern & Spero, Cleveland, Ohio, on brief for appellants.

Frederick M. Coleman U. S. Atty., David Margolis, Steven R. Olah, Paul R. Corradini, Special Attys., Crim. Div., U. S. Dept. of Justice, Cleveland, Ohio, on brief for appellee.

Before LIVELY and ENGEL, Circuit Judges, and CECIL, Senior Circuit Judge.

LIVELY, Circuit Judge.

The appellants James J. O'Neill and Richard Boucher were convicted on one count of interstate transmission of wagering information in violation of 18 U.S.C. § 1084. Their appeal is limited to questions that were first raised in the district court on a motion to suppress evidence which emanated from interceptions of telephone conversations made pursuant to an order entered by a United States Judge on April 18, 1972. The motion to suppress was denied following a hearing in the district court.

O'Neill and Boucher conducted an operation in Tonawanda, New York in which they furnished "line" information by telephone to bookmakers and other gamblers, advising them of the point spread and odds being quoted in various parts of the country on athletic contests. They also handled "layoff" bets on horse races for other bookmakers. The investigation which resulted in the indictment and conviction of appellants began some time prior to January 7, 1972. On that date a New York State District Attorney obtained from Justice Mahoney of the Supreme Court of New York an authorization to intercept conversations over a telephone located at Cheektowaga, New York. Neither of the appellants was named in the application for the wiretap order, but the order permitted interception of conversations of "others as yet unknown." The January 7 order contained a number of protective provisions including the following:

(h) That, in the event that unknown suspects are identified during the course of the interception process or if the interception process reveals evidence of crimes which are not specified in this Ex parte Order of Authorization, District Attorney MICHAEL F. DILLON shall, no later than three (3) days after the date of the return, make application, in conformance with the provisions of Section 2517(5) of Title 18, of the United States Code and Section 700.65(4) of the Criminal Procedure Law of the State of New York, for a nunc pro tunc order amending this order to include the newly discovered material; . . .

The January 7 order was amended on January 27, 1972 upon application of District Attorney Dillon supported by an affidavit of the officer in charge of the investigation. The names of three additional persons were included in the January 27 amendment to the order. However, neither of the appellants was named. On February 17, 1972, District Attorney Dillon filed a new application with Justice Mahoney in which the Appellant O'Neill was named as a person whose conversations were to be intercepted, and the location in Tonawanda, New York from which he operated and the telephone number there which was registered in his wife's maiden name were designated for electronic surveillance. The application was supported by the affidavit of the same investigator, and it disclosed that O'Neill's activities had first come to the attention of the police as a result of his making numerous calls to the telephone in Cheektowaga which were intercepted pursuant to

the January 7 order. Justice Mahoney granted the wiretap order for the Tonawanda telephone on February 17, 1972 and thereafter the investigators learned from interception of conversations on that telephone that O'Neill was receiving gambling information from parties using a telephone in Bedford Heights, Ohio. On April 18, 1972, the Chief Judge of the United States District Court for the Northern District of Ohio entered an ex parte order which authorized interception of conversations over the Bedford Heights, Ohio telephone. This order was entered in response to an application filed by a representative of the Department of Justice pursuant to authorization by Acting Attorney General Kleindienst. The supporting affidavit which was presented to the district judge incorporated portions of the affidavit which had been filed by the New York investigator in connection with the February 17 order of Justice Mahoney and disclosed that communications had been intercepted pursuant to the previous New York State authorization of February 17.

The first contention of appellants is that the New York authorities violated the terms of the January 7 order by failing to have it amended upon learning the identity of O'Neill. While conceding that it was permissible to intercept conversations of O'Neill as one who was unknown at the time the first wiretap order was granted, appellants maintain that failure to comply with the amendment provisions of that order renders all evidence which flowed from it, either directly or indirectly, tainted and subject to suppression. It was shown that the investigating officers knew of O'Neill's identity as one of the frequent callers to the intercepted telephone at the time they sought an amendment on January 27 and added names of other suspects. It is provided in 18 U.S.C. § 2518(10)(a)(iii) that a motion may be made by one aggrieved for suppression of the contents of a communication or evidence derived therefrom if "the interception was not made in conformity with

the order of authorization or approval." While there was no violation of the terms of the federal order, it is contended that violation of the previous state order which provided the information upon which the federal order is based vitiates the federal order as well.

■■ The provision for amendment of the New York order was included, insofar as it referred to the discovery of evidence of crimes not specified therein, in order to comply with 18 U.S.C. § 2517(5) and § 700.65(4) of the Criminal Procedure Law of the State of New York. There appears to have been a split among the lower courts of New York at the time the state court orders with which we are concerned were entered on whether subsequent discovery of the identity of previously unknown suspects required an amendment. This question was settled by the Court of Appeals of New York on July 6, 1972 when it held in People v. Gnozzo, 31 N.Y.2d 134, 335 N.Y.S.2d 257, 286 N.E.2d 706 (1972), cert. denied, sub. nom., Zorn v. New York, 410 U.S. 943, 93 S.Ct. 1373, 35 L.Ed.2d 610 (1973), that the statutory requirement for amendment applies only to the discovery of a different crime and does not require amendment to include the identity of a previously unidentified party. Thus it appears that the failure of the New York District Attorney to obtain an amendment of the January 7 order to include the name of O'Neill did not violate a statute, but at most failed to conform with the terms of the January 7 order.

In United States v. George, 465 F.2d 772, 775 (6th Cir. 1972), this court held that "wire tap evidence secured without regard to the limitation set forth in the authorization order is inadmissible." In that case, the order authorizing the wiretap directed that interception only take place when surveillance had indicated that the persons named in the order were on the premises and should be continued only when it was determined by voice recognition that one of the named persons was using the telephone. It was admitted by the FBI agent in charge of

the investigation that he had never seen this order and that no special instructions had been given limiting the interceptions. Furthermore, none of the recording officers knew the voices of the persons named in the order. Appellants argue that our decision in *George* compels suppression of the evidence objected to in this case. Reliance is also placed on United States v. Cafero, 473 F.2d 489 (3rd Cir. 1973), where it was held that one of the basic safeguards of the federal act authorizing interception of communications is the requirement that the authorizing judge be aware of the activities of those involved in the surveillance and the information which is being produced. It is claimed that the failure of the New York officers to comply with the amendment provision of Justice Mahoney's order "broke the chain of judicial supervision."

No New York case has been cited or found which decides whether the exclusionary rule should be applied to evidence obtained after failure to comply with a requirement of a wiretap order such as that involved in this case. The appellee points out, however, that the same state judge who granted the January 7 order also granted the authorization of February 17. The February 17 authorization was specifically directed to O'Neill with knowledge that O'Neill's identity was discovered as a result of interceptions made pursuant to the January 7 order. This is clear from examining the application and affidavit for the February 17 order. Since Justice Mahoney knew at the time he considered the February 17 application that O'Neill's identity had been learned prior to the January 27 amendment and that he had not been included therein, the appellee argues that the granting of the February 17 authorization constitutes approval of a new application in lieu of an amendment. A somewhat similar circumstance was involved in United States v. Tortorello, 480 F.2d 764 (2d Cir.), cert. denied, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973). There, a number of renewal and extension orders were obtained from the judge who had issued an original wiretap authorization. Although the original order authorized interceptions to obtain evidence of certain enumerated state crimes, some of the intercepted conversations disclosed other activities which constituted federal offenses. Federal authorities were notified and joined in the surveillance, but none of the orders was amended to include reference to the federal offense for which the defendant was eventually indicted. While acknowledging that both the federal and New York statutes provide for amendment to permit the use in criminal proceedings of communications unexpectedly intercepted, the court pointed out that the reports submitted to the judge in connection with applications for extensions revealed that the interceptions had disclosed the existence of the federal offense which was not anticipated at the time of the original application. The court held that the judge had before him sufficient information to make a determination that the original application was made in good faith and that the information about the crime which was not specified in the first application was incidentally intercepted during the course of a lawfully executed order. In denying a motion to suppress, the court made the following observation:

> Neither the New York statute nor the Act requires the issuing judge to announce formally in open court that he has noticed the interception of evidence not covered by the original order and has determined that it was properly obtained. It is enough that notification of the interception of evidence not authorized by the original order be clearly provided in the renewal and amendment application papers. A judge presumably will scrutinize any application and will scrupulously impose the restrictions required by statute. 480 F.2d at 783.

A careful consideration of the entire record, including the exhibits which contain the applications and supporting affidavits for each of the state

and federal wiretap orders convinces us that District Judge William K. Thomas correctly denied the motion to suppress. Justice Mahoney of the New York Supreme Court, who authorized both the January 7 and February 17 interception orders, was aware of the fact that O'Neill was not named in the application or order on January 7 or the amendment thereto on January 27. Nevertheless, on the basis of the investigator's affidavit which clearly showed that O'Neill had been identified prior to January 27 as a direct result of interceptions which took place pursuant to the January 7 order, the judge granted a new authorization on February 17 specifically directed to the activities of O'Neill. Although the order did not state that he accepted the application for a new authorization in lieu of an amendment to the previous order, it seems clear to us that this was the intent and effect of his decision to grant the February 17 order. Since the judge who entered the original order did not consider it to be violated and proceeded to enter a subsequent order which led to the evidence constituting probable cause for issuance of the federal order, the federal order was not tainted by failure of the New York authorities to seek an amendment to the first state court order.

■ We have spoken in this section of the opinion almost exclusively of O'Neill. This results from the fact that Boucher's position in the case is somewhat unclear. He was mentioned as a co-conspirator for the first time in an order of March 9, 1972 extending the February 17 authorization. Although Boucher makes some reference to the failure of the February 17 order to name him, he claims that his rights were violated by the failure to amend the original January 7 order to name O'Neill. We do not believe that Boucher is a person "aggrieved" by the failure to amend the January order and thus he has no standing to seek suppression on the basis of failure to amend that order. 18 U.S.C. § 2518(10)(a). Even if he could be held to be a person aggrieved,

Boucher has tied his case completely to that of O'Neill which we have held on this issue to be without merit.

■ The second contention of the appellants is that the application for the federal order did not set forth sufficient information for the judge to make a determination of the necessity for an interception of communications as required by 18 U.S.C. § 2518(1)(c) and (e). We have examined the affidavit which accompanied the application for the federal order and note that the FBI agent who made the application stated that "all confidential informants who have been reliable in furnishing information with regard to gambling activities in the Cleveland area were contacted . . . and none were able to furnish any information . . ." concerning the parties named or the activity, location or telephone listed in the application. The affidavit went on to describe in detail the methods of operation used by gamblers and the insufficiency of their records for the establishment of the elements of the federal violations which were being investigated. These are not mere conclusory statements, but rather are statements of fact from which the Judge could make a determination that "(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;" before he enters an ex parte order. The facts submitted in this case justified the entry of the order.

■■ Appellants also rely on 18 U.S.C. § 2518(1)(e) which requires a complete statement from the applicant of facts concerning all previous applications for wiretap orders. The application for the federal wiretap in this case disclosed the New York State court order of February 17, which was the only order directed to O'Neill. Appellants concede that the federal officers who requested the April 18 order did not know of the January 7 and 27 orders, but maintain that they should have been more diligent in learning of these orders. Section 2518(1)(e) requires dis-

**1026**

closure of all previous applications "known to the individual authorizing and making the application." Since the application disclosed the only previous authorizations known to the applicants and to the Acting Attorney General who authorized the application, there was complete compliance with the requirement of the statute. Since neither O'Neill nor his residence or facilities were involved in the January 7 application and order it would not appear that the statute would require disclosure thereof even if their existence had been known to the federal applicants. We also note that the Appellant Boucher was not a person "aggrieved" by the failure to list the January 7 application and order in the application for federal authorization and he has no standing on this issue.

■ The third basis upon which appellants seek suppression of evidence is their claim that the statutory procedure was not followed in obtaining authorization from the Attorney General of the United States to make application for the federal order. Again, we have carefully examined the original documents which were filed as exhibits and have concluded that the procedure set forth in 18 U.S.C. § 2516 was followed in this case. Appellants argue that the reference by the Acting Attorney General to a recommendation from an Assistant Attorney General in his approval of the authorization indicates that the Acting Attorney General merely "rubber stamped" that recommendation and that the authorization is an "institutional decision" rather than the individual decision of the Acting Attorney General. There is nothing in the documents or elsewhere in the record to indicate that the Acting Attorney General did not make the determination himself and there is nothing in the statute or statutory history to indicate that the Attorney General may not consult with and receive recommendations from subordinates within the Justice Department before determining whether to authorize an application for an interception order. As Judge Thomas pointed out from the bench, "Attorney General Kleindienst's specific recitation warrants the inference, the only reasonable inference that the attorney general independently considered the recited nature and bounds of the application that he was authorizing. The policy of congress, therefore, expressed in the requirement of Section 2516 is, I find, fully satisfied." This finding is fully supported by the record.

■ The final contention of appellants is that Title III of the Omnibus Crime Control Act of 1968 which contains the wiretap authorization statute is unconstitutional. It is claimed that the statute permits authorization for interception of communications with no particular description of the communications to be intercepted and thus fails to meet the requirements of the Fourth Amendment as set forth ·in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). We believe that Congress carefully noted the limitations required for a constitutional wiretap statute as detailed in Berger v. New York, *supra*, and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In *Katz*, the Supreme Court held that electronic surveillance is not unconstitutional per se, and we find no basis for holding that Title III of the Act is unconstitutional on its face or that it was unconstitutionally applied in this case.

The judgment of the district court is affirmed.