UNITED STATES of America,
Plaintiff-Appellee,

v.

George M. FLOREA and Raymond Paul
Vara, Defendants-Appellants.

Nos. 75–1613, 75–1614.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 13, 1976.

Decided Aug. 30, 1976.
Rehearing Denied Oct. 29, 1976.

Ralph W. Ross, Canton, Ohio, for appellant in No. 75–1613.

Louis Martinez, Canton, Ohio, for appellant in No. 75–1614.

Frederick M. Coleman, U. S. Atty., David S. Felman, U. S. Dept. of Justice, Cleveland, Ohio, Harvey M. Stone, William G. Otis, Washington, D. C., for appellee.

Before WEICK, CELEBREZZE and McCREE, Circuit Judges.

McCREE, Circuit Judge.

Raymond P. Vara and George M. Florea appeal from a jury conviction of three counts of transmitting wagering information across state lines in violation of 18

U.S.C. § 1084.[1] Count I of the indictment, charging conspiracy to transmit wagering information, was dismissed on the government's motion after the first trial ended in a mistrial because the jury was unable to reach a verdict. Counts II, III, and IV, charging the substantive offenses, refer to three telephone calls that were monitored pursuant to court-ordered interception.

A number and variety of issues are presented on appeal.[2] Appellants contend first that the district court erred in permitting two communications to be made to the jury in the absence of appellants or their counsel. Second, appellants contend that the district court erred in denying their motion to suppress the tapes of the intercepted conversations. Finally, appellants argue that the evidence was insufficient to support their convictions. We conclude that no reversible error was committed and affirm.

## I. COMMUNICATIONS WITH THE JURY IN APPELLANTS' ABSENCE.

The first communication of which appellants complain concerns the participation of an FBI agent who was present when tapes admitted as evidence were replayed for the jury after it commenced its deliberations. The other occurred when a juror told the judge of an attempt to influence his verdict. Appellants contend that because F.R. Crim.P. 43 provides that a criminal defendant is entitled to "be present . . . at every stage of the trial," they were entitled to be present in both cases. They claim that because they were not present they did not receive a fair trial. We disagree.

The first issue we consider is whether the district court erred in allowing, without notice to appellants or counsel, a prosecution witness to replay tape recordings of the intercepted conversations for the jury during its deliberations. After the jury commenced deliberations, it notified the court that it wanted to hear again certain tapes that had been admitted as evidence. Pursuant to the court's instructions and without notification of counsel, the courtroom deputy clerk brought the jurors into the locked courtroom where Special Agent Ault replayed the tapes. The judge had referred to Ault as the "court's technician,"[3] and Ault had operated the tape recorder during the trial.

On August 28, 1974, after the jury announced that a verdict had been reached, but before it had been given to the court, appellants learned that the tapes had been replayed. They immediately moved for a mistrial on the ground that this event occurred during a "stage of the trial" at which they were entitled to be present, as provided in Rule 43. Appellants vehemently objected to the participation of Agent Ault who had been a witness for the prosecution.

The judge overruled the motion at that time, and then on the day of sentencing, September 20, 1974, he indicated that a record should be made to reflect in more detail what transpired. Accordingly, the courtroom deputy clerk, Special Agent Ault, and a law clerk who had knowledge of the proceedings were called as witnesses to testify about what happened after the

---

1. In relevant part, 18 U.S.C. § 1084 provides that

 [w]hoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both.

2. We observe that although all issues were briefed jointly on appeal by Vara and Florea, in the trial court, certain issues were raised only by Vara. We find it unnecessary to consider whether Florea may raise these issues for the first time on appeal, because they do not involve reversible error.

3. Additionally, we question the propriety of the trial court's reference to Ault, a prosecution witness and government agent, as the "court's technician" in charge of the recording equipment during the course of the trial.

jury's request to rehear the tapes. The witnesses testified out of the presence of each other, and there was no conflict in their testimony. After the court and all counsel had an opportunity to question the witnesses, the court summarized the procedure as follows:

> The tapes were replayed pursuant to the instructions of the Court in a locked courtroom after everyone had been excluded therefrom except the technician [Ault] and the Deputy Clerk. . . . [The Deputy Clerk then advised the jury] that there was to be no conversation with the exception of a request to play any entire specific tape or a portion thereof, that no notes were to be taken, and there was to be no conversations [sic] with any of the individuals present.

Although Rule 43 does not entitle a defendant to be present during the jury's deliberations (which are not "a stage of the trial" at which he is entitled to be present), arguably he may be entitled to be present when a jury returns to the courtroom to rehear evidence, just as the defendant's presence is required when a jury receives additional instructions after it begins deliberations. The Supreme Court recently held that Rule 43 requires a trial judge to answer jury questions in open court, and to afford counsel an opportunity to be heard before the court's response. *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975). The rationale of *Rogers* would also seem to require the presence of the defendant and counsel when a deliberating jury requests a reprise of evidence that requires the communication of third persons with the jury. In this case, however, we need not formulate a general rule because we have the practical equivalent of a stipulation by counsel that the court could permit the tapes to be replayed before the jury in counsel's absence.

An examination of the transcript reveals that in part of his instructions, the judge informed the jurors that all exhibits were available for their consideration and assistance during deliberations. Thus, at that time, defense counsel knew that the tapes,

Exhibits 19, 20, 21, 22, and 73, would be available to the jury, and made no objection. Furthermore, when counsel for appellants finally did object, their primary objection was directed at the presence of Agent Ault, because of his "interest in the outcome of this lawsuit." Appellants have not demonstrated to us any prejudice that resulted from the judge's failure to answer the request in open court. We do not readily infer a waiver of a defendant's right to be present in court. However, under these circumstances, we determine that appellants constructively stipulated to the replay of the tapes at the jury's request.

Although we have found no violation of Rule 43, we must still decide whether the presence of Agent Ault during the jury deliberations requires reversal. First, we conclude that there was no violation of due process. Second, although a district court should not permit anyone other than authorized court personnel to communicate with a jury during its deliberations, nevertheless we conclude that in this case reversal is not required under our supervisory authority, because Ault's presence did not affect appellants' "substantial rights." Rule 52(a), F.R.Crim.P.

On at least one occasion, the Supreme Court has held that unauthorized contact with a jury violates due process. In *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), two deputy sheriffs who were prosecution witnesses were placed in charge of a jury which had been sequestered. The Court reversed Turner's conviction because it determined that the association between the witnesses and the jury deprived Turner of the right to trial by an impartial jury. 379 U.S. 471, 85 S.Ct. 546.

Clearly a jury must be protected against unauthorized communication, but the Court in *Turner* did not adopt a *per se* rule that any contact between a witness for the prosecution and a jury requires reversal of a conviction. *See Helmick v. Cupp*, 437 F.2d 321 (9th Cir. 1971), *cert. denied*, 404 U.S. 835, 92 S.Ct. 120, 30 L.Ed.2d 67 (1971). Furthermore, *Turner* is distinguishable from this appeal. In *Turner*, the jury con-

tact was continuous and intimate association with a sequestered jury on three consecutive days, which provided an opportunity for the prosecution witnesses "to renew old friendships and make new acquaintances among the members of the jury." 379 U.S. at 473, 85 S.Ct. at 550. Here, in contrast, Agent Ault was never alone with the jury and was in its presence only long enough to replay the tapes.

The opinion in *Turner* discloses that the deputies who had testified for the prosecution and were in charge of the jurors were "the two principal witnesses for the prosecution." 379 U.S. at 467, 85 S.Ct. at 547. Their testimony established that one of them had conducted the investigation leading to Turner's arrest, and the other had "prevailed upon Turner to make a written confession." And they were the officers who arrested Turner and accompanied him to the location where part of the murder weapon was located. 379 U.S. at 467, 85 S.Ct. at 547. Agent Ault, on the other hand, was but one of sixteen witnesses for the government, and he testified only to the fact that appellants' telephone conversations had been intercepted and that their residences had been searched. After a review of all the evidence, we conclude that appellants were not deprived of a fair trial.

■■ Although we do not hold the contact with the jury in this case violated due process as it did in *Turner*, we nonetheless do not—and in the future we will not—condone similar acts. We are required to exercise supervisory authority over the administration of justice in courts of this circuit even in cases where departures from ideal procedures fall short of a violation of due process. *See McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). There-

fore, we hold that without prior stipulation a trial court should not permit any unauthorized person—especially one associated with either prosecution or defense—to communicate with or otherwise have any contact with a jury in any proceeding. If such contact is necessary, it should be under the personal supervision of the court. We determine that a *per se* rule is necessary here because although the danger of improper influence inheres in every contact between an interested party and a jury, actual prejudice may be difficult to establish.[4]

Appellants also contend that the district court erred in excusing a juror, *sua sponte*, without notice to them or to their counsel, and without either an explanation of the reasons for the action or an opportunity to object.

The district court gave the following account of this incident in a sealed transcript which was then transmitted to the court of appeals. On Monday, August 26, 1974, the jury was expected to begin deliberating. Before court commenced that morning, the judge was approached in chambers by Juror Number One, who stated that on the previous weekend he had received $200 in an envelope and a telephone call from a person who told him that he would also be further "rewarded later." The judge summoned a court reporter to transcribe the juror's statement, as well as the judge's decision to (1) excuse Juror Number One and to replace him with an alternate juror; (2) immediately sequester the jury; (3) not disclose to the parties the reason for the discharge; and (4) direct the FBI to undertake a full investigation.[5]

Appellants rely on *United States v. Gay*, 522 F.2d 429 (6th Cir. 1975), in which we held that it was reversible error for the trial judge to engage in discussions with

---

4. *Per se* rules frequently are fashioned when there is an unusually high risk of prejudice to a party and the proofs of prejudice may be difficult to establish; or when an important social policy will be served by a prophylactic rule; or a more definite standard is required to guide official conduct in future cases; or when case by case analysis places an unjustifiable burden

on limited judicial resources. *Dawson v. Cowan*, 531 F.2d 1374 (6th Cir. 1976).

5. The trial judge ordered the investigation because there were strong indications that the first mistrial, when the jury was unable to reach a verdict, may have involved jury tampering.

members of the jury and to consider requests for excuses out of the presence of the defendant and without notice to counsel. In *Gay* the jury had been selected and sworn nine days before the commencement of the trial. During the intervening period between the jury selection and the trial, the district judge had determined that the jury should be sequestered for the length of the trial. Without informing the defendant or his counsel, the judge had excused two regular jurors and one alternate, and had replaced the two regulars with other alternates. The defendant argued that the court erred in conversing in defendant's absence with the jurors after they had been impaneled, and that the defendant should have been afforded the opportunity to object to requests for excuses from jurors and to have a record made of the proceedings.

In *Gay* the total absence of a record of the proceedings in which changes in the jury occurred required us to assume prejudice. Based on the defendant's right to be present "at every stage of the trial," Rule 43, F.R.Crim.P., we reversed the conviction and remanded for a new trial. However, we specifically stated that our holding "does not affect the discretion of the trial court to dismiss a juror and replace him with an alternate, or dismiss an alternate for illness, hardship or other cause." 522 F.2d at 435. We further observed that "even though such dismissals are within the discretion of the trial judge and do not require consent of the parties, his discretion is always subject to review for abuse, and a record is necessary for such review." 522 F.2d at 435.

 In the present case, the trial judge carefully prepared a record of the proceedings. The record included the testimony of the juror, and the court's reasons for excusing him. Under the circumstances, the district judge did not exceed the bounds of

judicial discretion discussed in *Gay*. Accordingly, we conclude that under the circumstances of this case, appellants were not prejudiced because they were absent when the district judge excused Juror Number One, substituted an alternate, and sequestered the jury.

## II. WIRE INTERCEPTION APPLICATION AND ORDER.

We turn next to appellants' contention that the government failed to comply with statutory requirements for the application and issuance of the intercept order, 18 U.S.C. §§ 2510–2520, and that the district court erred in refusing to suppress the tapes of the intercepted telephone conversations.

A large part of the government's evidence was gathered pursuant to an order issued by the district court on November 28, 1972, authorizing the interception of wire communications. The government's application contained, *inter alia*, a forty-six page affidavit submitted by an FBI special agent. The affidavit asserted that reliable informants stated that appellants and others engaged in illegal gambling activities, and that this information had been corroborated by physical surveillance and by records of the telephone company. The district court granted the government's application and authorized the FBI to intercept wire communications of Vara, Florea, and five other named persons allegedly involved in the gambling offenses.

18 U.S.C. § 2516(1)[6] establishes a procedure for applications to intercept wire communications. It requires that before a federal judge may grant an order authorizing the interception an application must be authorized by the Attorney General or by a specially designated Assistant Attorney General. In an order dated November 8,

---

6. In pertinent part, 18 U.S.C. § 2516(1) states that

> The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in con-

formity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made . . . . .

1972,[7] Attorney General Richard Kleindienst specially designated Assistant Attorney General Henry Peterson to authorize applications for interception orders from November 12, 1972, through November 26, 1972. On November 22, 1972, Assistant Attorney General Peterson authorized the applications for the wiretaps challenged here. Pursuant to this authorization, an application was presented to the district judge on November 28, 1972.

◼ Appellants claim that since the authority of the Assistant Attorney General expired on November 26, his authorization was no longer valid when it was presented to the district judge on November 28. We find no merit in appellants' claim, since § 2516(1) requires that the Assistant Attorney General be specially designated when he authorizes the application, and not when the application is presented to the court. Appellants concede the authority of the Assistant Attorney General on November 22, when the application was originally approved. Our conclusion is consistent with the legislative history of section 2516(1), which indicates that the reason for requiring the approval of *only* the Attorney General or a specially designated Assistant Attorney General was to assure uniform practices in authorizing applications for electronic surveillance. 1968 U.S.Code Cong. & Admin.News, pp. 2112, 2185.

Appellants' reliance upon *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), is misplaced. *Giordano* holds that § 2516(1) must be strictly construed only to permit the Attorney General or a specially designated Assistant Attorney General to exercise the authority to approve an interception application. Our decision is consistent with *Giordano*, since Peterson was specially designated when he authorized the interception application.

◼ Appellants' next contention is that the district court erred in quashing a subpoena issued by Vara to Attorney General Richard Kleindienst. According to appellants' brief, Mr. Kleindienst was subpoenaed "to testify as to what he intended at the time he issued Order 495–72." [8]

The Supreme Court recently stated in *United States v. Nixon*, 418 U.S. 683, 702, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974):

Enforcement of a pretrial subpoena *duces tecum* must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues. Without a determination of arbitrariness or that the trial court finding was without record support, an appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c) [F.R.Crim. P.].

We conclude that the trial court did not abuse its discretion by quashing the subpoena. The district court in its order denying appellants' motion to suppress evidence recited "that all material facts necessary for a ruling [on the motion to suppress] are before the Court. The appearance of Richard Kleindienst . . . has not been shown to be required." This conclusion is amply

---

7. Order No. 495–72:

By virtue of the authority vested in me by 28 U.S.C. 509, 510, 5 U.S.C. 301, and 18 U.S.C. 2516, the Assistant Attorney General in charge of the Criminal Division is specially designated to exercise the authority conferred by Section 2516 of Title 18, United States Code, to authorize applications to a Federal judge of competent jurisdiction for orders authorizing the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which such application is made, when such interception may provide evidence of any of the offenses specified in Section 2516 of Title 18, United States Code.

The authority delegated herein to the Assistant Attorney General in charge of the Criminal Division shall be exercised by him only during my absence in Europe from November 12, 1972, to November 26, 1972, inclusive, and shall expire at the end of the latter day.

November 8, 1972

/s/ Richard G. Kleindienst
Attorney General

8. Order No. 495–72 is set out in full in note 7, *supra*.

supported by the evidence presented to the trial court.

Vara and Florea also argue that the district court should have suppressed the tapes of the intercepted telephone communications, because the affidavit in support of the wiretap application was submitted unsigned. Appellants contend that this procedure violated 18 U.S.C. § 2518(1), which provides that

[e]ach application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application.

On November 28, 1972, Steven Olah, an attorney for the Department of Justice, and Richard Ault, Jr., a special agent of the FBI, appeared before Judge Battisti to apply for the order authorizing interception of certain wire communications. Although Agent Ault failed to sign the affidavit in support of the application for the intercept order, it is undisputed that prior to the entry of the intercept order, in the presence of the district judge, Ault swore to the truth of the contents of the affidavit. Moreover, the affidavit was enclosed as a part of the actual application which did contain the signature of Mr. Olah.

 18 U.S.C. § 2518 does not require submission of affidavits; it merely requires that written applications be submitted upon oath or affirmation. Consequently, we find that there was compliance with section 2518(1), since Judge Battisti based the order on the sworn statements made in his presence as well as the written application.

 Appellants' next assignment of error is that 18 U.S.C. § 2518(8)(b) was violated. This section requires that

[a]pplications made and orders granted under this chapter shall be sealed by the judge. Custody of the applications and

orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years.

In August of 1973, Edwin Gale, an attorney for the Department of Justice, was requested by his superiors to submit to them copies of the signature pages from the wire interception authorizations of November 28, and December 26, 1972, and from the moving papers that accompanied those authorizations.

On August 28, 1973, a district judge signed an order authorizing Gale to unseal, copy, and return the papers. After obtaining the specified, sealed documents, Gale took them to the copying room, broke the seals, made the copies, and then returned the originals to the court.

 Appellants contend that this procedure violated the sealing requirements of § 2518(8)(b). Since that section permits disclosure after sealing "upon a showing of good cause before a judge of competent jurisdiction," appellants' argument that the seal should never be broken is without merit. Moreover, we are convinced that the request to make the copies of the sealed documents did contain the requisite showing of good cause, and appellants have offered no persuasive suggestions to the contrary. Our conclusion is consistent with the legislative history of § 2518(8)(b), which indicates that the sealing requirements were established in order to protect the confidentiality of the government's investigation as well as the authenticity of the application and order. 1968 U.S.Code Cong. & Admin.News, pp. 2112, 2194.

 Appellant Vara also asserts that the government did not strictly comply with 18 U.S.C. § 2518(1)(e)[9] because it failed to

---

9. 18 U.S.C. § 2518(1) requires:

(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing

upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application.

incorporate a complete statement of all the facts concerning all previous wire interceptions involving Vara. It is undisputed that two applications to intercept wire communications had been authorized on October 14, 1972, by the United States District Court of Nevada. Although the wiretaps conducted pursuant to the Nevada authorization intercepted communications in which Vara participated, an in-camera inspection of the moving papers for the two applications disclosed that neither Vara, his residence, nor his phone numbers were listed in the application or in the order. The district court specifically found that Vara's name, identity, and activities became known to the government agents only during the course of the interceptions authorized by the Nevada court. The language of § 2518(1)(e) does not require disclosure of information about prior *interceptions*, but only of information about prior *applications*. *See United States v. Bellosi*, 163 U.S.App.D.C. 273, 501 F.2d 833, 839 (1974).

Moreover, Vara's claim is controlled by our decision in *United States v. O'Neill*, 497 F.2d 1020 (6th Cir. 1974). The appellants in *O'Neill* asserted that the application to intercept their communications did not contain information about other communications of theirs that had been intercepted by means of an earlier state authorized wiretap. Just as the Nevada wiretap application did not name Vara, so the state authorization in *O'Neill* did not name O'Neill and his co-defendants. In *O'Neill*, 497 F.2d at 1026, we held:

> Since the application [for interception] disclosed the only previous authorizations known to the applicants and to the Acting Attorney General who authorized the application, there was complete compliance with the requirement of the statute. [18 U.S.C. § 2518(1)(e)].

Each application shall include the following information:

\* \* \* \* \* \*

(e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge

We also stated that even if the applicants for the federal wiretaps had known that O'Neill's conversations had previously been intercepted pursuant to the state authorization, § 2518(1)(e) would not require this disclosure unless O'Neill or his residence had been designated in the state application and order. Since neither Vara nor his residence was designated in the Nevada wiretap application or order, we determine that there was no violation of the statute.

## III. SUFFICIENCY OF EVIDENCE.

 Finally, appellants attack the sufficiency of the evidence that led to their convictions. In determining whether there is sufficient evidence to support a jury's verdict, the evidence must be viewed in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Leon*, 534 F.2d 667 (6th Cir. 1976). We are firmly convinced that the evidence presented in the court below was sufficient to support appellants' conviction of violating 18 U.S.C. § 1084. There is substantial evidence included in the record from which a jury could find (1) that appellants were engaged in the business of betting or wagering; (2) that the telephone conversations in question were made across state lines; and (3) that in each call, information assisting in the placing of bets was transmitted.

We conclude that appellants received a fair jury trial, that the government complied with the statutory requirements for the application and issuance of the wire intercept order, and that the jury's verdict was supported by sufficient evidence. Accordingly, the judgments of conviction are AFFIRMED.

for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application.