**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ray FREEMAN, Sr. and Harry Van Ausdall, Defendants–Appellants.**

**Nos. 79–1587, 79–1588.**

United States Court of Appeals,
Tenth Circuit.

Submitted Sept. 16, 1980.

Decided Nov. 10, 1980.

Rehearing Denied Jan. 5, 1981.

Richard J. Smith, Albuquerque, N.M. (R. E. Thompson, U. S. Atty., Margo J. McCormick, Asst. U. S. Atty., Albuquerque, N.M., with him on brief), for plaintiff–appellee.

William S. Dixon, Albuquerque, N.M. (Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, N.M., on briefs), for defendant–appellant, Ray Freeman, Sr.

Michael A. Williams (Craig R. Maginness, Denver, Colo., with him on briefs), for defendant–appellant, Harry Van Ausdall.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

An indictment charged defendants–appellants Freeman and Van Ausdall, and three others, with conspiracy to import marijuana in violation of 21 U.S.C. §§ 846 and 963. The jury found Freeman and Van Ausdall guilty, and they appeal. We reverse because of the presence of persons, other than jurors, in the jury room during its deliberations.

New Mexico police officer Chappel learned, through an informant, of Freeman's activities in the importation of marijuana from Mexico. Gillespie, an agent of the Federal Bureau of Investigation, FBI, assisted the ensuing investigation. The informant, equipped with a recording device, had numerous conversations with Freeman and Van Ausdall. Several tapes of these conversations were played for the jury in open court during the trial. Near the end of its instructions, the court told the jury:

> "We do have the tapes in this case, and we have the equipment set up in the courtroom. If you should care to listen to the tapes, which are exhibits in the case, please inform the Deputy Marshall, and he will inform us."

Defendants did not object to this instruction.

The next reference to the tapes was later the same day. Defense counsel were present. The record does not disclose whether the defendants were present. The court said:

> "After the jury had requested to have played back Government Exhibit No. 21, I instructed the Marshal and *operator, Mr. Gillespie*, to be in the room with the jury while the tape was played to the jury. (Emphasis supplied.)

A fair inference from the above is that without notice to any party the court told Gillespie, the chief government investigator in the case, to operate the tape equipment.

The court disclosed that its law clerk had been in the jury room and had reported to the court that the Marshal had told the jury that the taking of notes was permissible and that during the playing of the tape no comments had been made while he, the law clerk, was in the room. The court directed the law clerk to return to the jury room and tell the Marshal that notes should not be taken. The court asked the lawyers for comments, and none were made. The court further said that the tape was not played in the regular jury room because that room and the courtroom were being used in the trial of another case.

Gillespie actively assisted state officers in the investigation of the activities of Freeman and Van Ausdall. He signed the crim-

inal complaints against the defendants and the affidavit for a warrant to search Freeman's residence. At the trial Gillespie testified as a government witness that a bag containing marijuana was taken from Freeman when his residence was searched.

The question is whether the defendants were denied their Fourteenth Amendment right to a fair trial. *Odell v. Hudspeth*, 10 Cir., 189 F.2d 300, 303, cert. denied, 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 656, denied habeas relief to a state prisoner who asserted that he had not received a fair trial because a prosecution witness acted as bailiff and custodian during jury deliberations. The *Odell* decision was repudiated in *Turner v. Louisiana*, 379 U.S. 466, 471 n. 8, 85 S.Ct. 546, 549, 13 L.Ed. 424 and 474. In *Turner* the Supreme Court reversed a state conviction because the association with the jury of two prosecution witnesses as jury custodians deprived the defendant of the right to trial by an impartial jury as required by the due process clause of the Fourteenth Amendment. Id. at 471–474, 85 S.Ct. at 548–550.

In *United States v. Pittman*, 9 Cir., 449 F.2d 1284, on court order a government agent, who had a prominent role in the trial, played a tape in the jury room. Citing *Turner v. Louisiana*, the court held that "access to the jury during its deliberative process by any adversary simply cannot be tolerated." Id. at 1285–1286.

In *United States v. Florea*, 6 Cir., 541 F.2d 568, 570, 572, an FBI agent was present when tapes were replayed for the jury after it had commenced its deliberations. After verdict, the defense objected and the court held a hearing. On the testimony presented, the trial court found no prejudice. The court of appeals reviewed the evidence and concluded that the defendants were not deprived of a fair trial. Id. at 572. After saying that it would not condone such conduct in the future, the court announced a per se rule that "without prior stipulation a trial court should not permit any unauthorized person * * * to communicate with or otherwise have any contact with a jury in any proceeding." Id.

■ The government argues that the defendants are foreclosed from attacking the intrusion into the jury room by their failure to object. When the court first disclosed the presence of Gillespie, the Marshal, and the law clerk in the jury room, the harm had been done. No opportunity had been afforded for a contemporaneous objection. Without knowledge of the situation, the defense cannot be charged with lying in wait when it had an opportunity to speak, Cf. *Wall v. United States*, 10 Cir., 384 F.2d 758, 763, or with intentionally waiving a known right, Cf. *Lawn v. United States*, 355 U.S. 339, 353, 78 S.Ct. 311, 319, 2 L.Ed.2d 321.

■ The government further contends that the defendants have shown no prejudice and that, at the most, we should remand for a hearing on what happened in the jury room. See *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 and *United States v. Greer*, 10 Cir., 620 F.2d 1383. The government has a responsibility to assure that every defendant in a criminal case receives a fair trial. In the circumstances of this case the FBI agent should not have been in the jury room to operate the sound equipment. When the government learned of the activities of the agent, it should have requested an immediate hearing, but it did not. Without such a request, the court of its own motion should have ordered an immediate hearing. It did not. The agent was an adversary. Absent a stipulation by the parties and the approval of that stipulation by the court, the agent should not have been in the jury room. See *United States v. Florea*, supra, 541 F.2d at 572.

On any hearing that might be held, Rule 606(b), F.R.Evid. applies. The Rule permits objective testimony by jurors but forbids subjective testimony. The correct application of the Rule in this circuit is uncertain. See the differences expressed by the panel members in *U. S. v. Greer*, supra, 620 F.2d at 1385, 1387, and 1391. The trial was more than 18 months ago. Any effort now to draw the thin line between objective and subjective would be futile. We reject the

government's request that the case be remanded for a hearing.

The sanctity of jury proceedings must be preserved. The danger of improper influence adheres in every contact between an interested party and a jury. As said in *United States v. Pittman*, supra, 449 F.2d at 1286:

> " * * * the potential for prejudice inherent in any adversary's intrusion into the jury room and the uncertainties in ascertaining the extent of such prejudice require the extreme measure of a new trial in cases where the invasion was at the direction of the court and not inadvertent."

The court instructed FBI agent Gillespie to be in the jury room and gave no notice to counsel. In the circumstances presented, the defendants were deprived of their constitutional right to a fair trial.

■ Because a new trial is necessary, two other points presented by the defendants must be mentioned. The first trial of the case resulted in a mistrial when it was disclosed that Freeman's counsel was the father of an unindicted co-conspirator. The mistrial was declared at the request of Freeman with the concurrence of Van Ausdall. No claim is made of prosecutorial misconduct. The grand jury then returned a superseding indictment. The claim is that the grand jury lacked power to return the second indictment. We have held to the contrary. *United States v. Davis*, 10 Cir., 578 F.2d 277, 279. See also *United States v. Cerilli*, 3 Cir., 558 F.2d 697, 700–701.

■ The indictment charged that Freeman and Van Ausdall conspired with three other named defendants and with others, including by name the informant, who were not indicted. Defendants say that the trial court erred in refusing to instruct the jury that the defendants could not conspire with the government informant. *Sears v. United States*, 5 Cir., 343 F.2d 139, 142, does not support the defense argument. As pointed out in *United States v. Seelig*, 5 Cir., 498 F.2d 109, 112, Sears applies when "the *only* other supposed co–conspirator is a govern-

mental informant." (Emphasis in original) In the case at bar the evidence links Freeman and Van Ausdall in a conspiracy and both of them with other indicted conspirators. Considering the evidence adduced and the entire instructions of the court, it properly rejected the tendered instruction.

Reversed and remanded for a new trial.