52 F.3d 322
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Addo JAYSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Loretta AHANEKU, a/k/a Loretta, Defendant-Appellant.
 Nos. 93-5879, 93-5880.
 United States Court of Appeals, Fourth Circuit.
 Argued January 30, 1995.
Decided April 21, 1995.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. William M. Nickerson, District Judge. (CR-92-261-WN)
 ARGUED: Alan Royce Lee Bussard, Towson, MD, for Appellant Ahaneku; Mary Elizabeth Davis, DAVIS & DAVIS, Washington, DC, for Appellant Jayson. Christine Manuelian, Assistant United States Attorney, Baltimore, MD, for Appellee. ON BRIEF: Christopher M. Davis, DAVIS & DAVIS, Washington, DC, for Appellant Jayson. Lynne A. Battaglia, United States Attorney, Baltimore, MD, for Appellee.
 D.Md.
 AFFIRMED.
 Before HALL and HAMILTON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Addo Jayson and Loretta Ahaneku appeal from judgments convicting them of conspiracy. Jayson appeals from a judgment convicting him of false statements and possession of heroin. We affirm.
 
 
 2
 * Agents of the United States Customs Service and Drug Enforcement Administration obtained information that Gloria Nwosu, Robert Donnell Jones, Lawrence Okoye and others were importing and distributing drugs in Silver Spring, Maryland. The agents applied for and received authorization to intercept communications from telephones in Nwosu's residence and from Jones's cellular telephone. Agents later received authorization to place electronic surveillance devices in Nwosu's home. The agents later arrested several suspects, including appellants Addo Jayson and Loretta Ahaneku, and executed search warrants at various business and residential locations.
 
 
 3
 Most of the intercepted conversations were in Ibo, a language spoken in Nigeria. For this reason, much of the government's evidence consisted of English transcripts of the recorded conversations. At trial, cooperating government witnesses testified that Jayson helped members of the conspiracy obtain Temporary Protective Status from the Immigration and Naturalization Service by fraudulently representing Nigerian nationals as Liberian nationals to INS agents.
 
 II
 
 4
 Jayson assigns two errors arising out of irregularities during jury deliberations. Before the court instructed the jury, Jayson's attorney, Christopher M. Davis, stated that he wished to be informed of any questions the jury might have during deliberations. He gave the clerk of the court his office telephone number and a pager number.
 
 
 5
 During deliberations, the jury sent a note to the judge requesting an opportunity to listen to a tape of a conversation between Jayson and another defendant. The judge directed the prosecutor to play the tape for the jury. No court reporter was in the courtroom at the time the tape was played, nor were Jayson or his attorney.
 
 
 6
 Soon after the tape was played, the jury sent another note to the judge, which read: "In the matter of guilt or innocence pertaining to conspiracy, should we follow the law as stated on pages 39, 40, and 41, or should we follow your instructions as stated on pages 42 and 43? The two seem to conflict." Without contacting counsel or the defendants, the judge responded by note:
 
 
 7
 The instructions on conspiracy at pages 39, 40, 41, 42, and 43 are not inconsistent or conflicting in any way that is apparent to the Court. If you have a question on the law of conspiracy which you believe is answered in conflicting ways by the instructions, please be specific as to what you see as a conflict so that the issue can be clarified.
 
 
 8
 Later that day the judge held a telephone conference with the prosecutor and three defense attorneys. Jayson's attorney did not participate in the conference, and an attorney who was standing in for him stated at the conference that he was unwilling to stand in for Jayson's attorney on the issues being discussed. During the conference the judge informed defense counsel that the prosecutor had played the tape for the jury. He said he "was in the courtroom the whole time" the tape was being played and that he did not see any reason for participation by anyone else in the playing of the tape. He said the entire matter took about five minutes. The prosecutor stated that she had said nothing to the jury but had simply operated the tape machine. The judge then informed counsel of the jury's question and his response.
 
 
 9
 The next day the judge told Jayson's attorney he had not thought it necessary or appropriate to make sure that the attorney be present during the conference call. The judge also said that he had come into the courtroom the previous day "during the course of the playing of the tape."
 
 
 10
 Jayson first asserts that the district court committed reversible error when he allowed the government's attorney to replay a tape for the jury in the absence of the defendant or his counsel. The government claims no violation of Jayson's rights occurred and that any error was harmless.
 
 
 11
 Federal Rule of Criminal Procedure 43 requires, with a few exceptions not pertinent here, that a defendant be present in proceedings at "every stage of the trial." The Due Process Clause forbids contact between jurors and government agents when such contact might violate the defendant's right to an impartial jury. Turner v. Louisiana, 379 U.S. 466 (1965).
 
 
 12
 In Turner, the jury was sequestered and placed in the custody of two county sheriff's deputies. Those deputies testified at trial regarding key evidence. Over the course of a three-day trial, the deputies conversed with the jurors, ate with them, and ran errands for them. 379 U.S. at 468. The Court held that the continuous contact between the deputies and jurors deprived the defendant of due process by subverting the "basic guarantees of trial by jury." 379 U.S. at 473. The situation in this case is less egregious than that presented in Turner.
 
 
 13
 Other courts have condemned the practice of having a government agent play a tape for a deliberating jury without notice to the defendant or defense counsel. See United States v. Brown, 832 F.2d 128 (9th Cir.1987); United States v. Freeman, 634 F.2d 1267 (10th Cir.1980). In each case a government agent associated with the prosecution was alone with the jury during the playing of the tape.
 
 
 14
 In United States v. Florea, 541 F.2d 568 (6th Cir.1976), a prosecution witness replayed a tape for the jury in the absence of the defendant and defense counsel. A hearing was held afterward at which the district court determined what had occurred during the playing of the tape. The appeals court held that any error was harmless because a court clerk was present during the playing of the tape and because the defendant's substantial rights had not been affected, but warned that in the future, any contact between a government agent and a deliberating jury must be supervised by the court. 541 F.2d at 571-72.
 
 
 15
 In United States v. Kupau, 781 F.2d 740 (9th Cir.1986), a government agent replayed a tape for a deliberating jury. The trial court instructed the jury that the agent was simply a tape technician and then left the agent alone with the jury. The appeals court held that this was error but concluded that because there was no indication that improper communications between the agent and jury occurred, and because defense counsel had not objected to the clearing of the courtroom, the error was harmless. 781 F.2d at 742-43.
 
 
 16
 Here, the trial court did not admonish the jury against communicating with the prosecutor. Neither Jayson nor his attorney was informed that the tape was to be played to the jury. No court reporter was present at the playing of the tape. Jayson's counsel was not apprised of the court's afternoon telephone conference. These actions were error; the court violated Rule 43. Allowing the prosecutor to replay evidence for a jury in the absence of defense counsel needlessly imperiled the integrity of the jury's deliberative process.
 
 
 17
 Nevertheless, the judge stated on the record that he was present for all or part of the time the tape was being played. The entire matter took about five minutes. The prosecutor did not speak to the jury but simply operated the tape machine. While we cannot condone the trial court's actions, under these circumstances, we conclude that the court's actions did not deprive Jayson of his right to a fair trial under the Due Process Clause. The violation of Rule 43 did not affect Jayson's substantial rights and was therefore harmless. Fed.R.Crim.P. 52(a).
 
 
 18
 Jayson next claims that the trial court violated Rule 43 by responding to the jury's question in the defendant's absence.
 
 
 19
 The Supreme Court in Rogers v. United States, 422 U.S. 35, 39 (1975), explained that Rule 43 requires trial courts to notify defense counsel of requests from the jury for further instructions and to respond to such requests in open court. In the case before us the trial court's failure to consult defense counsel before responding to the jury's note was error.
 
 
 20
 Error arising out of the court's contact with the jury in the absence of the defendant and defense counsel is, however, harmless if it is established beyond a reasonable doubt that it did not prejudice the defendant's substantial rights. Fed.R.Crim.P. 52(a); Rushen v. Spain, 464 U.S. 114, 118-20 (1983); United States v. Parsons, 993 F.2d 38, 42 (4th Cir.1993). Error may be prejudicial when the trial court, without consulting the parties, undertakes to instruct the jury on substantive matters. See, e.g., United States v. Burns, 683 F.2d 1056, 1058-59 (7th Cir.1982) (reversible error where judge orally instructed jurors on meaning of overt act requirement in conspiracy charge).
 
 
 21
 Jayson asserts that, given the theory of his defense, his inability to offer suggestions to the court before it responded to the jury constituted prejudice.
 
 
 22
 The court initially instructed that in order to find the defendant guilty, the jury must find that he participated in the conspiracy "with the knowledge of its unlawful purpose and with the specific intention of furthering its business or objective." The jury was also instructed that "the defendant need not have been fully informed as to all of the details or the scope of the conspiracy in order to justify an inference of knowledge on his or her part. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives." During deliberations the jury informed the trial court that these instructions seemed inconsistent. The court responded that it perceived no conflict, and advised the jury that they should formulate specific questions for the court if, after reading the instructions again, they were still confused. The trial court responded to the jury in a neutral and nonsubstantive way. See United States ex rel. S.E.C. v. Billingsley, 766 F.2d 1015, 1019-22 (7th Cir.1985) (no prejudice to defendant resulted from court's response, in the absence of the defendant and his counsel, that jury should continue deliberations in accordance with previous instructions).
 
 
 23
 Somewhat similar circumstances arose in United States v. Harris, 9 F.3d 493 (6th Cir.1993). There the trial court, at the request of the jury and without notifying the parties, sent a written copy of its instructions to the jury room. The appeals court held that this violation of Rule 43 was harmless because the instructions were correct, the trial court had not made a substantive response to the jury's note, and the defendant had shown no likelihood of prejudice. 9 F.3d at 499. The court rejected the defendant's argument that he was prejudiced by his inability to frame an answer to the jury's concerns, emphasizing that the jury had previously received the same instructions and that the trial court had not added to them. 9 F.3d at 499.
 
 
 24
 The trial court's initial instructions on the conspiracy charge were correct and consistent, so no detriment to Jayson arose from the court's reaffirming them. After their initial note the jury sent no further questions to the judge even though he had offered to entertain specific inquiries. The trial court's actions presented no reasonable possibility of prejudice to Jayson's rights. The trial court's error was harmless.
 
 
 25
 The district court may have acted precipitately in an effort to prevent the inconvenience to the jury that would have resulted from awaiting the presence of the defendants and their counsel. But other measures should be taken to avoid this inconvenience without disregarding well-defined principles of the Due Process Clause and Rule 43.
 
 III
 
 26
 Appellants raise several other issues on appeal, none of which requires extensive discussion.
 
 
 27
 Both Jayson and Ahaneku assert that the trial court's omission of defense counsel's suggested instructions on reasonable doubt lessened the prosecution's burden of proof and failed to inform the jury that they must acquit the defendants if they had a reasonable doubt as to the defendants' guilt. After reading the court's instructions to the jury, we conclude that the instructions as a whole accurately explained both the prosecution's burden of proof and the presumption that a defendant is innocent until proven guilty beyond a reasonable doubt. See Victor v. Nebraska, 114 S.Ct. 1239, 1243 (1994).
 
 
 28
 Appellants next claim the trial court erroneously allowed a government case agent to testify as an expert regarding English translations of coded Ibo conversations. The government sufficiently demonstrated the case agent's expertise on direct examination, and such testimony could have been helpful to the jury. Fed.R.Evid. 702. The district court's admission of the case agent's testimony was well within its discretion. See United States v. Hughes, 970 F.2d 227, 235-36 (7th Cir.1992).
 
 
 29
 Appellants argue that the government's wiretap authorization was improper under 18 U.S.C. Sec. 2518 because the judge signed the authorization order one minute before signing the application and supporting affidavits. The defendant has the burden of demonstrating that a wiretap order is invalid. United States v. Nunez, 877 F.2d 1470, 1472 (10th Cir.1989). The government supplied the application and affidavits to the judge well in advance of his order, and we are not persuaded that the judge's authorization was not based on the government's application.
 
 
 30
 Jayson next contends that the trial court erred in limiting his presentation of certain evidence and in refusing to order the government to produce evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963). We conclude that the trial court exercised sound discretion in refusing Jayson's requests. The proffered evidence was irrelevant and confusing, and the Brady evidence requested by the defendant was not material. See United States v. Gravely, 840 F.2d 1156, 1163 (4th Cir.1988) (trial court has broad discretion regarding presentation of evidence); United States v. Kelly, 35 F.3d 929, 936 (4th Cir.1994) (defendant has right to evidence under Brady if evidence is material).
 
 
 31
 Jayson protests that the district court erroneously sentenced him under a criminal history category of II rather than I. He insists that his prior conviction in the Eastern District of Virginia arose out of conduct related to his Maryland conviction and therefore should not have been counted in calculating his criminal history. The district court correctly found that the "instant offense" in Maryland was conspiracy to import and distribute heroin. The false statements to the INS were in furtherance of this conspiracy. In contrast, the conduct in Virginia, defrauding the INS, occurred at a different time and involved aliens who were not engaged in trafficking drugs. The Virginia crime was not related to the instant offense. See USSG Sec. 4A1.2(a)(1). For the same reason, the district court did not err in imposing a sentence consecutive to that imposed in Virginia. See USSG Sec. 5G1.3(c).
 
 
 32
 The district court properly increased Jayson's offense level by two points for his use of a special skill in defrauding INS agents to further the conspiracy. See USSG Sec. 3B1.3; United States v. Connell, 960 F.2d 191, 198 (1st Cir.1992) (upholding adjustment to sentence of stock broker whose expertise enabled him to launder money successfully). Finally, the district court correctly imputed 2.65 kilograms of heroin to Jayson for purposes of computing his offense level. See United States v. McManus, 23 F.3d 878, 885 (4th Cir.1994) (to be attributable to defendant, acts must have been within scope of conspiracy and reasonably foreseeable to defendant).
 
 
 33
 No. 93-5879--AFFIRMED.
 
 
 34
 No. 93-5880--AFFIRMED.
 
 
 35
 HALL, Circuit Judge, concurring in part and dissenting in part:
 
 
 36
 I cannot agree that the government has demonstrated that the district court's error in allowing the prosecutor to play back the tape for the jury outside the presence of either Jayson or his lawyer was harmless beyond a reasonable doubt. Even if the government had shown that the playback was harmless, we would still be compelled to reverse Jayson's conspiracy conviction because of the harm done by the district court's inexplicable failure to secure Jayson's presence prior to answering the jury's note. I must respectfully dissent, therefore, from Part II of the majority's opinion.
 
 
 37
 I concur, however, in the majority's opinion insofar as it affirms Ahaneku's conviction. Because I would reverse all of Jayson's convictions outright on the jury access issue, I would not address the numerous other errors that he has assigned, except to the extent that Ahaneku has assigned the same ones.
 
 I.
 A.
 
 38
 The district court's actions in this case were peculiar, to say the least. When Davis asked the court whether his presence would be required during jury deliberations, the court responded that its "general practice" was to contact counsel and obtain his or her input with regard to any jury questions. In light of the Supreme Court's admonition in Rogers v. United States, 422 U.S. 35, 39 (1975), cited ante at 6, this is a pretty good "general practice" to have.
 
 
 39
 Nevertheless, when the jury informed the court that it wanted to listen once more to a recorded conversation involving Jayson, the court did not deem it expedient to contact Davis. Though the court and the prosecutor were present during the playback, the court did not consider securing the presence of either Davis or Jayson.
 
 
 40
 Likewise, only an hour later, when the jury was apparently struggling with the question of Jayson's guilt on the conspiracy charge and asked the court for guidance, the court did not consider Jayson or Davis to be necessary participants. When the prosecutor finally persuaded the court to conduct a telephone conference to inform counsel for all six defendants of what had occurred, Davis was not contacted--though his client was far and away the most directly affected.
 
 B.
 
 41
 As the majority notes, ante at 5-6, the government bears the burden of demonstrating that the district court's startling violation of Jay son's constitutional rights, as codified in Rule 43, was harmless beyond a reasonable doubt. Though it may well be that nothing untoward occurred during the prosecutor's playback for the jury, the government--given the state of the record--cannot sustain its heavy burden.*
 
 
 42
 We simply cannot allow a conviction to stand where the proceedings are clouded by what could reasonably appear to be a severe impropriety. If the district court thought it necessary, once deliberations had begun, to bring the jury back before it or the prosecutor, it had a duty to ensure that Jayson and his lawyer were also present--period.
 
 II.
 
 43
 Even if I could agree with the majority that the prosecutor's playback for the jury does not necessitate reversal of all of Jayson's convictions, I would nevertheless conclude that the district court's failure to secure the presence of Jayson and his attorney upon receiving the jury's note questioning the conspiracy instructions, ante at 3, requires reversal of the conspiracy conviction.
 
 
 44
 Because the jury's note followed by only about an hour the playback of the telephone conversation, it is reasonable to assume that the jury was deliberating over whether Jayson's statements on the tape sufficiently implicated him in the drug conspiracy. Untainted by bias or prejudice, the tape was the most trustworthy evidence of Jayson's alleged involvement.
 
 
 45
 To help it evaluate whether Jayson was a conspirator, the jury had been instructed to decide whether Jayson "participate[d] with knowledge of [the conspiracy's] unlawful purpose and with the specific intention of furthering its business or objective as an associate or a worker." However, the jury had also been instructed that Jayson "need not have been fully informed as to all the details or the scope of the conspiracy in order to justify an inference of knowledge on his or her part." While a lawyer may not see any irresolvable contradiction between these instructions, a layperson might be inclined to throw his or her hands up in confusion.
 
 
 46
 In any event, though we do not know the exact source, it is clear that the jury was puzzled by some aspect of the conspiracy instructions, and the court, instead of seeking any input from the defense, replied unhelpfully (perhaps even a bit cavalierly) that "[t]he instructions ... are not inconsistent or conflicting in any way that is apparent to the Court." Ante at 3. Because the jury clearly had some difficulty tying Jayson to the conspiracy and because it received no guidance--when it obviously wanted some--to interpret the most important evidence before it of Jayson's involvement, it cannot be said that the district court's mishandling of the situation was harmless beyond a reasonable doubt.
 
 
 
 *
 The majority notes, ante at 4, that "[t]he prosecutor stated that she had said nothing to the jury but had simply operated the tape machine." I have no reason to doubt the prosecutor's assurances, but, with all respect to her, I cannot reconcile our duty to ensure that criminal defendants are accorded due process with a reliance on the unsworn statements of an adversary
 Even if the prosecutor's statements could be considered, they would not be sufficient to demonstrate the harmlessness of the district court's actions. See United States v. Brown, 832 F.2d 128, 130 (9th Cir.1987):
 [T]he affidavit of the case agent himself[that he did not interact with the jury in any way] ... fails to convince us ... that no prejudicial contact occurred. Such contact could be very subtle, such as a nod at a significant portion of the tape. It might have been unintended, or even unnoticed by the case agent himself.