UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Gregory GREER, a/k/a Greg
Greer, Defendant-Appellant.

No. 78–1950.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 28, 1979.

Decided April 28, 1980.

Rehearing Denied June 2, 1980.

Kenneth P. Snoke, Asst. U. S. Atty., Tulsa, Okl. (Hubert H. Bryant, U. S. Atty., Tulsa, Okl., with him on the brief), for plaintiff-appellee.

Patrick A. Williams, of Williams, Landman & Savage, Tulsa, Okl., for defendant-appellant.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Defendant Greer was convicted by a jury for violating 21 U.S.C. §§ 841(a)(1), 846. He raises several issues for our consideration on appeal, the most fundamental of which involves allegedly improper contact between a United States Deputy Marshal and the jury. After a hearing on this issue, the trial court held that no prejudice to the defendant resulted.

The contact, which came to the court's attention after verdict and sentence, occurred at a lunch break during trial. In response to a question, the marshal informed a juror that one Daniels, who was previously convicted on an unrelated charge, could receive either a "straight" sentence or be sentenced under the Federal Youth Corrections Act, 18 U.S.C. §§ 5005 *et seq.* The marshal explained eligibility for sentencing under the Act and the Act's expungement provisions. Following this exchange, another juror asked about the application of the Youth Corrections Act to another young man convicted by a prior jury on which she served. This and other questions were, according to some jurors' reports, related to a man named Williamson. However, at least one juror believed the sentencing conversations to be specifically about Greer. At the hearing, the jurors disagreed on the thrust of the conversations but most indicated—and the marshal's own testimony confirmed—that there was extensive discussion of the Youth Corrections Act and its effect on sentencing of eligible persons.

The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial. Breach of this standard has often been grounds for reversal. A jury is obligated to "reach its verdict without regard to what sentence might be imposed." *Rogers v.*

*United States,* 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975); *United States v. Davidson,* 367 F.2d 60, 63 (6th Cir. 1966). Absent a statutory requirement that the jury participate in the sentencing decision, nothing is left "for jury determination beyond the guilt or innocence of an accused." *Chapman v. United States,* 443 F.2d 917, 920 (10th Cir. 1971).

We need imagine no improbable hypotheticals to appreciate the prejudicial effects of sentencing discussions as specific as those in this case. Information about sentencing or other consequences of a verdict is prejudicial because, if the jury is convinced that a defendant will receive a light sentence, it may be tempted to convict on weaker evidence. It is quite irrelevant that most (but not all) jurors who heard the conversations understood them to refer directly to defendants in other cases. Because of his youthful appearance, the connection of this defendant to the Youth Corrections Act was obvious. We should not assume that jurors are so obtuse that they are unable to draw simple inferences.

Any private contact with jurors during trial about the matter pending before them is "presumptively prejudicial." *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). If a guilty verdict following prejudicial contact is to be sustained, the government must "establish . . . that such contact with the juror was harmless to the defendant." *Id.* at 229, 741 S.Ct. at 451. In *Remmer,* decided prior to the enactment of the Federal Rules of Evidence, the trial court was required to "determine the circumstances [of the contact], the impact thereof upon

the juror, and whether or not it was prejudicial." 347 U.S. at 230, 74 S.Ct. at 451. However, Fed.R.Evid. 606(b) radically modifies this aspect of *Remmer.*

Under Rule 606(b), an inquiry into a verdict is limited to a determination "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." It is no longer proper for a court to inquire into "the effect of anything upon [a juror's] mind or emotions as influencing him to assent to or dissent from the verdict." Fed.R.Evid. 606(b). The effect of the Rule is that a presumption of prejudice cannot be overcome once a jury has reached its verdict.[1]

The record indicates that the trial judge basically understood the import of Rule 606(b). He was very careful at the hearing to insure that jurors testified not about the *effect* of the contact on their deliberations, but only about the nature of the information conveyed.[2] This makes it clear that the trial judge did not find the contact to be harmless. Instead, he believed that the information conveyed was not prejudicial because it "did not pertain to the guilt or innocence of the defendant." Record, vol. 1, at 128. That legal standard was erroneous. Because the jury was given presumptively prejudicial information and no showing of harmlessness could be made, the case must be retried.

The only other substantial issue on appeal relates to the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161 *et seq.* The trial court found a violation of the Act[3] but

---

1. This effect of Rule 606(b) may require the courts to narrow the definition of "presumptively prejudicial" found in *Remmer v. United States,* 347 U.S. at 229, 74 S.Ct. at 451. In any event, juror contact which may affect the outcome of a criminal trial—such as specific discussions about sentencing—clearly remains presumptively prejudicial.

2. The court did, however, allow jurors to be asked if they followed their instructions or kept their oath. This inquiry impeaches their verdict as much as specific probes into their delib-

erative processes. Even if we were to indulge the fiction that a juror would ever confess the violation of his oath, such an inquiry is forbidden by Rule 606(b).

3. A total of 179 days intervened between the time of Greer's initial indictment and the beginning of trial. To meet the requirements of the Speedy Trial Act and the district court's own plan, trial should have begun within 120 days. The government was unable to show that at least 59 days should have been excluded from the computation.

concluded that, since it occurred prior to July 1, 1979, the court retained discretion to rule that dismissal is an inappropriate sanction. We agree that such discretion exists as to violations occurring prior to July 1, 1979, 18 U.S.C. § 3163(c), and that the court did not abuse that discretion in this case. Furthermore, because Greer failed to demonstrate that any prejudice resulted, dismissal was not required by either Fed.R. Crim.P. 48(b) or the Sixth Amendment.

Reversed and remanded for a new trial.

WILLIAM E. DOYLE, Circuit Judge, concurring.

I agree generally with the opinion of Judge McKay, who has written the majority opinion in this case. However, I do wish to comment briefly.

 I would say that in most instances the presentation of information by a court official to a jury with regard to the question of sentencing or punishment is going to sully the result and will require a reversal, but I do not favor having a conclusive presumption approach to the question. In so concluding, I do not wish to create the impression that I feel that the matter is less serious than does my brother McKay.

The communication to the jury of the subject of punishment is oftentimes reversible even when the judge communicates it. It is so fundamental that a stock instruction must be given to the jury. This provides that the consideration of punishment is a matter exclusively within the province of the *court* and is never to be weighed by the jury in any way in arriving at its verdict as to the guilt or innocence of the accused.

Why is this principle a fundamental part of criminal jurisprudence? Because punishment is outside the record as far as a jury is concerned, and its only effect can be to persuade the jury in its decision as to guilt or innocence. Thus, if the defendant has some personal appeal and the jury has a reluctance to convict him because of his youth and in view of their belief that he may go to prison, communication to the jury that it is likely that he will be treated as a youth offender and will be subject to

early release quiets their fears and when the information is communicated by a court officer the jury feels that he is providing reliable counsel. As a consequence, the courts have condemned this kind of activity through the years, and a well-trained marshal refrains from communicating anything pertaining to the decision of the jury. He confines himself to such subjects as the weather, if he must talk, and that is why there is little room for a hearing on prejudice.

The practice of trial courts encouraging a jury to recommend leniency is not approved, *United States v. Glick*, 463 F.2d 491 (2d Cir. 1972), nor is it acceptable to tell a jury that it can recommend psychiatric treatment in a case in which mental capacity for crime is an issue, *United States v. Patrick*, 161 U.S.App.D.C. 231, 494 F.2d 1150 (1974).

Devitt and Blackmar, Federal Jury Practice and Instructions, cites the Third Circuit case of *United States v. Smith*, 450 F.2d 312 (3d Cir. 1971), cert. denied 405 U.S. 932, 92 S.Ct. 989, 30 L.Ed.2d 807 (1972), wherein the judge's statement which indicated that the charge was not too serious and that the sentence would not be severe was held by the Third Circuit to be undesirable but was corrected by the statement that punishment was for the court. This was said by Devitt and Blackmar to be a "dubious precedent. Any intimation of leniency might be construed as an invitation to convict." The authors also cite *United States v. Davidson*, 367 F.2d 60 (6th Cir. 1966), which ruled that it was plain error for the judge to suggest to the jury that it might recommend leniency.

The authors cite with approval the decision of the Supreme Court in *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975). The Supreme Court there held that the trial court should not have limited its response to the jury's inquiry as to the trial court's willingness to accept a verdict with a recommendation of "extreme mercy." The Court said at the very least the trial court should have told the jury

that such a recommendation would not be binding in any way. The Court's language is applicable to the case at bar and therefore it is quoted as follows:

> Although a violation of Rule 43 may in some circumstances be harmless error [citations omitted], the nature of the information conveyed to the jury, in addition to the manner in which it was conveyed, does not permit that conclusion in this case. The trial judge should not have confined his response to the jury's inquiry to an indication of willingness to accept a verdict with a recommendation of "extreme mercy." At the very least, the court should have reminded the jury that the recommendation would not be binding in any way. [citation omitted]. In addition, the response should have included the admonition that the jury had no sentencing function and should reach its verdict without regard to what sentence might be imposed. [citations omitted]

422 U.S. at 40, 95 S.Ct. at 2095. The opinion of the Chief Justice concluded that:

> [t]he combined effect of the District Court's errors was so fraught with potential prejudice as to require us to notice them notwithstanding petitioner's failure to raise the issue in the Court of Appeals or in this Court. *Silber v. United States*, 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962); *Brotherhood of Carpenters v. United States*, 330 U.S. 395, 411–412, 67 S.Ct. 775, 784, 91 L.Ed. 973 (1947). Cf. *United States v. Davidson*, [367 F.2d 60, 63 (6th Cir. 1966)].

422 U.S. at 41, 95 S.Ct. at 2095. The judgment of the Court of Appeals was reversed and the case was remanded for further proceedings.

The decision in *Rogers* furnishes broad perspective in considering the question before us in that it shows the grave nature of the issue and the high importance of careful supervision of the jury and court officers.

In closing, I would emphasize that our primary concern here is with the assurances given to the jury that the defendant would be treated with leniency at the time of sentencing. The judge had assured the jury that it had nothing to do with sentencing, and the marshal freely advised the jury as to the provisions of one of the sentencing laws, the effect of which would be to lessen the sentence:

The trial court finally found and concluded that no prejudice resulted from the activity described in the majority opinion. The judge attempted to follow Rule 606 in conducting the hearing. He heard the evidence as to extraneous prejudicial information being improperly brought to the jury's attention, which procedure Rule 606(b) allows. Rule 606 does not, however, authorize evidence as to the effect that such extraneous material might or might not have had on the jury's deliberations. The judge nevertheless received evidence that the extraneous evidence did not affect the verdict, and the judge found that the evidence was not prejudicial. In my view, this was contrary to the wording and the object of Rule 606(b) and was improper. There was meager evidence as to the effect on the jury. The rule does not justify receipt of this kind of testimony. It was improper for the judge to receive it and to follow it in support of his ruling that the verdict should be upheld.

BARRETT, Circuit Judge, dissenting:

I dissent from the majority's holding that the trial court erred in concluding, following a meticulous, careful hearing into the matters related by Deputy Marshal Connolly concerning the Federal Youth Corrections Act, that no prejudice occurred to Greer.

Among the most fundamental protections available to an accused is the right to trial by an impartial jury. United States Constitution, Amends. VI, XIV; *Ristaino v. Ross*, 424 U.S. 589, 595 n. 6, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258 (1976). Just as is true in the case of many constitutional protections, however, the contours of its scope are not easily defined.

> Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropri-

ate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula.

*United States v. Wood*, 299 U.S. 123, 145–146, 57 S.Ct. 177, 185, 81 L.Ed. 78 (1936).

It is generally accepted, of course, that injection of outside influences into a jury's deliberative process is contrary to the foundations upon which our system of justice rests. In order to counter the inherent problems involved with impermissible intrusions on a jury's deliberative process, the Supreme Court has formulated a series of prophylactic rules. Specifically, in *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), the Supreme Court held that private communications between jurors and others during a trial concerning matters then pending before the jury are *presumptively* prejudicial unless their harmlessness is or becomes apparent. *See also: Gold v. United States*, 352 U.S. 985, 77 S.Ct. 378, 1 L.Ed.2d 360 (1957) (per curiam); *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); *United States v. Gigax*, 605 F.2d 507 (10th Cir. 1979); *Ellis v. State of Oklahoma*, 430 F.2d 1352 (10th Cir. 1970), *cert. denied*, 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971). This presumption of prejudice *"is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." Remmer v. United States, supra*, 347 U.S. at p. 229, 74 S.Ct. at p. 451; [Emphasis supplied]; *Ellis v. State of Oklahoma, supra*, at pp. 1355–1356.

Normally, when an allegation of jury misconduct arises, the trial judge should conduct a full investigation of the matter in an effort to ascertain whether the alleged jury misconduct actually occurred and, if so, whether it was prejudicial to the defendant. Unless the trial judge is clearly convinced

that the matter was not prejudicial, he must grant the motion for new trial. If he concludes that the matter either did not occur or that it was clearly not prejudicial, he must state his "essential findings of fact" on the record so as to facilitate meaningful appellate review.

In conducting such an investigation, the district courts must, of necessity, be vested with discretion to determine the extent and type of investigation requisite to a ruling on the motion for a new trial. *Tillman v. United States*, 406 F.2d 930 (5th Cir. 1969), *cert. denied* (for all defendants except Fox), 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). Moreover, "what is prejudicial to a fair trial when the issue of 'juror misconduct' is raised, is a matter that must, to a large extent, be left to the discretion of the trial court, and that an appellate court will not reverse the determination of that court on such an issue unless it is established as clearly erroneous." *United States v. Bohr*, 581 F.2d 1294, 1302 (8th Cir. 1978), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978), *quoting, Little v. United States*, 331 F.2d 287, 295 (8th Cir. 1964), *cert. denied*, 379 U.S. 834, 85 S.Ct. 68, 13 L.Ed.2d 42 (1964).[1] *Cf. United States v. Gibbons*, 607 F.2d 1320, 1330–1331 (10th Cir. 1979) (motion to dismiss jury panel).

Applying these principles to the case at bar, I first observe that the District Court conducted a complete investigation and detailed hearing into the allegations of the defendant. A full range of both direct and cross-examination of all jurors and the Deputy United States Marshal was conducted by both the Government and Greer, subject only to the limitations placed on them by Federal Rule of Evidence 606(b), 28 U.S.C. Following the completion of the hearing, the Trial Court rendered oral findings of fact and conclusions of law. Thereafter, a written order conforming substantially to the oral findings was entered.

---

1. If the testimony or affidavits of jurors involved in the case is considered necessary, the district court should insure that the requirements of Rule 606(b), F.R.E. 28 U.S.C., are followed. *See: United States v. Morris*, 612 F.2d 483 (10th Cir. 1979); *Gafford v. Warden*, 434 F.2d 318 (10th Cir. 1970).

The evidence presented at the hearing[2] indicated that the incident complained of occurred during a recess on the second day of trial.[3] Deputy United States Marshal Harry Connolly testified that he was approached by one of the jurors during the first recess on the second day of trial concerning the sentencing of an individual named Daniels who had previously been convicted on an unrelated charge. Connolly advised the juror that he did not know what sentence Daniels received; but that he would check and get back with her during the next recess. At that time he advised the juror that Daniels had not yet been sentenced but that he could receive either a "straight" sentence or be sentenced under the Federal Youth Corrections Act, 18 U.S.C. § 5005 *et seq.* Sketchy information concerning eligibility for sentencing under the Youth Corrections Act and its expungement provisions was also provided.

Shortly after this exchange, another juror said "that she had sat on another jury with a young man and wanted to know if the Youth Corrections Act would apply to him and [Connolly] said, 'That's right.' " [R., Vol. VII, p. 45]. In asking this question, the other juror specifically referred to a defendant by the name of *Williamson.* [R., Vol. VII, pp. 45, 54]. At no time did Connolly refer to or discuss with any of the jurors what sentence Greer would be eligible for in the event of a conviction. Connolly ventured no opinion as to Greer's guilt or innocence in the presence of any of the jurors. [R., Vol. VII, pp. 45–46].

Carolyn French, a juror, testified that she inquired of the Deputy United States Marshal as to the length of sentence another individual by the name of *Williamson* received following his conviction on an unrelated charge by a jury on which she previously served. She specifically testified that she did not recall any mention of the Federal Youth Corrections Act; did not hear any other juror inquire as to the sentence received by any other individual; and further, that she did not engage in any discussion with her fellow jurors concerning the Federal Youth Corrections Act or its consequences. [R., Vol. VII, pp. 31, 37].

Juror Carol Wonderley testified that during a recess on the third day of trial she overheard a Deputy United States Marshal discuss generally the Federal Youth Corrections Act. It was her impression, at that time, that the particular Act in question had not yet been passed. She did not recall hearing any juror inquire or the Deputy United States Marshal make any statement as to whether the provisions of the Federal Youth Corrections Act would apply in the Greer case. Other than that instance, she did not engage in or overhear any discussion concerning the provisions of the Federal Youth Corrections Act. [R., Vol. VII, pp. 37, 42].

Anita Susan Waska, the juror who originally contacted Greer's attorney with the information, related that during the second day of trial a Deputy United States Marshal told her and a few other jurors that: "There is a new law that was recently passed that under the Youth Corrections Act, youthful first offenders up to the age of twenty-six years will, if" . . . you know, "when he is sentenced under the Youth Corrections Act, he will be in for like four to six months. He will be out on good behavior." [R., Vol. VII, p. 9]. She also related that the Marshal discussed the ex-

---

**2.** Inasmuch as the determination of a motion of this type requires the resolution of factual issues, I feel that where the court has stated "its essential findings on the record" we must view the evidence presented at the hearing in the light most favorable to the District Court's resolution of these issues. *See: United States v. Richards,* 500 F.2d 1025 (9th Cir. 1974), *cert. denied,* 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393 (1975); *United States v. Boukater,* 409 F.2d 537 (5th Cir. 1969).

**3.** I have disregarded many of the matters contained in the affidavit of juror Anita Susan Waska because they violate the provisions of Rule 606(b), F.R.E. 28 U.S.C. which prohibits the testimony of a juror as to any matter or statement occurring during the jury's deliberations or any juror's state of mind in the course of an inquiry into the validity of a verdict.

pungement provisions of the Act. All this discussion concerned an individual whose case had previously been tried and was then ready for sentencing.

Shortly after this discussion, Waska testified that another juror asked whether these provisions would "hold true" for another young man (Waska understood this question to refer to Greer), to which the Marshal responded "That's right." She also testified that the jurors discussed it on their breaks during the trial period. She identified the other juror as Carolyn French.[4] [R., Vol. VII, pp. 20, 22]. Waska also testified that she adhered to the instructions given by the Court to the best of her ability and abided her oath as a juror. [R., Vol. VII, p. 30].

All jurors, with the exception of juror Waska, testified that there was no conversation among themselves or between the Deputy United States Marshal concerning what sentence Greer could expect upon conviction. Six jurors testified that they did not hear any reference or conversations among any jurors or the Deputy United States Marshal concerning the provisions of the Federal Youth Corrections Act or what sentence, if any, Greer could expect to receive. Three jurors remembered some generalized conversation concerning the provisions of the Federal Youth Corrections Act but not in reference to defendant Greer. They also testified that no opinion as to sentencing was offered or given by the Deputy United States Marshal. The testimony of the three remaining jurors, Waska, French and Wonderley, is detailed above.

I, of course, am aware that the jury's concern with the consequences of its verdict, either in sentencing, or the nature and extent of it, or in probation, has often constituted grounds for reversible error. *See: Rogers v. United States*, 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975); *Chapman v. United States*, 443 F.2d 917, 920 (10th Cir. 1971); *United States v. Davidson*, 367 F.2d 60 (6th Cir. 1966). The basis of this rationale is that if the jury is convinced

a defendant will receive a light sentence, such amounts to an invitation to convict on weaker evidence. Undoubtedly, this could occur if a jury should be impressed with the view that a particular defendant is eligible for a sentence under the Federal Youth Corrections Act. Thus, the seriousness of the allegations involved herein are apparent.

In assessing the problems presented by this issue, I believe it important to observe that the District Court specifically instructed the jury as follows:

> The punishment provided by law for the offense charge[d] in the indictment is a matter exclusively within the province of the court, and punishment is not to be considered by the jury in arriving at an impartial verdict as to the guilt or innocence of the defendant.

[R., Vol. IX, p. 524].

The jury was provided with written copies of the Court's instructions which were thus available to the jurors during deliberations. These written instructions contained the matters referred to above. [R., Vol. I, pp. 61, 62; R., Vol. IX, p. 544].

It is presumed that jurors will conscientiously observe the instructions and admonitions of the court. Speculation that this was not done cannot be employed in assailing a verdict in the absence of a showing of facts to the contrary. *United States v. Cooper*, 464 F.2d 648 (10th Cir. 1972), *cert. denied*, 409 U.S. 1107, 93 S.Ct. 921, 34 L.Ed.2d 688 (1973). *See also: Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144 (1978), *cert. denied*, 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978); *United States v. Smaldone*, 485 F.2d 1333 (10th Cir. 1978), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974).

As noted previously, where an evidentiary hearing has been conducted on the issue of juror misconduct, the district court's findings of fact will not be disturbed unless clearly erroneous and all conflicts in the testimony must be resolved in favor of

---

4. Carolyn French testified that she inquired as to whether the Federal Youth Corrections Act provisions applied to Williamson. *No mention of Greer was made.*

those findings of fact. Having reviewed the record carefully, it is my conclusion that the District Court's findings and conclusions to the effect that the statements did not prejudice Greer in any manner or taint the jury's verdict are not clearly erroneous. [R., Vol. I, p. 128; R., Vol. VII, pp. 122, 125].

Any belief in juror Waska's mind that Carolyn French's question related to the applicability of the Federal Youth Corrections Act to Greer, rather than Williamson, was clearly disproven as fact by the testimony of other witnesses. All other witnesses, including French, testified that no reference was made to Greer. Deputy United States Marshal Connolly's comments did not concern the matters then pending before the jury and did not prejudice Greer. The District Court handled the allegations and the motion for a new trial in a careful, judicious manner. The Court's findings and conclusions should be upheld.

While my conclusion of prejudice is respectfully at variance with that of the majority based on the factual circumstances presented in this case, I observe that Judge Doyle, in concurring, rejects the "conclusive presumption" effect which the majority opinion attributes to Rule 606(b) F.R.E. 28 U.S.C. once a jury has reached its verdict. If that view should prevail, I believe ours would be the only federal court so holding. Nothing indicates that the congressional enactment of Rule 606(b), *supra*, was designed to "radically" modify existing case law spanning approximately ninety years. As early as 1896, the United States Supreme Court held that "[p]rivate communications, possibly prejudicial, between jurors and third persons . . . are absolutely forbidden, and invalidate the verdict, *at least unless their harmlessness is made to ap-*

*pear." Mattox v. United States, supra,* 146 U.S. at p. 150, 13 S.Ct. at p. 53 [Emphasis supplied]. If the majority opinion's conclusion that "The effect of the Rule [606(b)] is that a presumption of prejudice cannot be overcome once a jury has reached its verdict" is correct, ninety years of precedent must be discarded. At p. 1385.

Other courts have not considered the enactment of Rule 606(b) F.R.E. 28 U.S.C. to constitute any radical departure from previous case law. One court has concluded that "Congress recognized that the rule [606(b)], as adopted, tracked the existing case law." *Government of Virgin Islands v. Gereau,* 523 F.2d 140, 149, n. 22 (3rd Cir. 1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976). Since the enactment of Rule 606(b), reported opinions have found the presumption of prejudice created by *Mattox* and its prodigy rebutted in certain circumstances. *Llewellyn v. Stynchcombe,* 609 F.2d 194 (5th Cir. 1980); *United States v. Winkle,* 587 F.2d 705 (5th Cir. 1979), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979); *United States v. Boscia,* 573 F.2d 827 (3rd Cir. 1978), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2248, 56 L.Ed.2d 411 (1978); *United States v. Cianciulli,* 482 F.Supp. 585 (E.D.Pa.1979). The creation of such a far-reaching precedent, if indeed required, is the business of the Supreme Court. The effect of the majority conclusion is to overrule, at least in part, ninety years of existing case law and various decisions of that Court.