FILED
United States Court of Appeals
Tenth Circuit

January 5, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EMILIO TENIENTE,

          Petitioner-Appellant,

v.

WYOMING ATTORNEY GENERAL;
WYOMING DEPARTMENT OF
CORRECTIONS STATE
PENITENTIARY WARDEN,

          Respondents-Appellees.

No. 10-8033
(D.C. No. 2:09-CV-00010-ABJ)
(D. Wyo.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **MURPHY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

Emilio Teniente, a Wyoming state prisoner, seeks a certificate of

appealability ("COA") to challenge the district court's denial of his petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Exercising jurisdiction under

---

[*]      This order is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

      After examining the briefs and the appellate record, this three-judge panel
determined unanimously that oral argument would not be of material assistance in
the determination of this matter.  *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G).
The case is therefore ordered submitted without oral argument.

28 U.S.C. §§ 1291 and 2253(a), we deny Mr. Teniente's application for a COA and dismiss his appeal.

## BACKGROUND

In 2005, a Wyoming jury convicted Mr. Teniente of first-degree murder and conspiracy to commit murder. *See Teniente v. State*, 169 P.3d 512, 517 (Wyo. 2007). During the trial, the prosecutor elicited testimony from a witness regarding his shared gang affiliation with Mr. Teniente and certain characteristics of their gang. In 2007, the Wyoming Supreme Court affirmed Mr. Teniente's conviction and sentence in all respects. *Id.* at 538. The court only did so, however, after initially remanding the case to the trial court to develop the record concerning a jury note that surfaced during the pendency of the appeal. As discussed further below, that jury note was prompted by a contact between Mr. Teniente's girlfriend and a juror. The Wyoming Supreme Court assessed the circumstances surrounding the girlfriend's contact with the juror and the trial court's handling of the note, and discerned no grounds in the trial court's actions for reversing Mr. Teniente's conviction. Mr. Teniente filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Wyoming. The district court dismissed Mr. Teniente's habeas petition and denied a COA.

-2-

**DISCUSSION**

A COA is a jurisdictional prerequisite to this court's review of a habeas corpus petition. *See* 28 U.S.C. § 2253(c); *Allen v. Zavaras*, 568 F.3d 1197, 1199 (10th Cir. 2009) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). "We will issue a COA 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Allen*, 568 F.3d at 1199 (quoting 28 U.S.C. § 2253(c)(2)). "To make such a showing, an applicant must demonstrate 'that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).

In determining whether to grant a COA, we need not engage in a "full consideration of the factual or legal bases adduced in support of the claims," *Miller-El*, 537 U.S. at 336; instead, we undertake "a preliminary, though not definitive, consideration of the [legal] framework" applicable to each claim, *id.* at 338. Although an applicant need not demonstrate that his appeal will succeed, he "must prove something more than the absence of frivolity or the existence of mere good faith" to obtain a COA. *Id.* (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983), *superseded on other grounds by statute*, 28 U.S.C. § 2253(c)(2)) (internal quotation marks omitted).

Because the Wyoming Supreme Court addressed the merits of Mr. Teniente's claims, "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of [his] request for [a] COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant an application for a writ of habeas corpus on behalf of a person in state custody whose claims were adjudicated on the merits in state court only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

Mr. Teniente seeks a COA on his claim that the prosecutor committed misconduct by introducing evidence of his alleged gang membership, as well as his claim that the state trial court erred in admitting this evidence. He also claims that the state trial court erroneously failed to treat improper contact with the jury as presumptively prejudicial, and held an inadequate hearing regarding this improper contact.

## I. Evidence of Gang Membership

Mr. Teniente argues that his Fourteenth Amendment due process rights were violated when the prosecutor allegedly committed misconduct by introducing evidence of gang membership, and when the state trial court allegedly

erred by admitting this evidence.[1]  However, as discussed below, these claims are procedurally defaulted.

A state prisoner generally must exhaust his available state court remedies before a federal court will grant his habeas corpus petition.  *See* 28 U.S.C. § 2254(b)(1)(A); *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006); *see also Fairchild v. Workman*, 579 F.3d 1134, 1151 (10th Cir. 2009) ("Before we can pass on the merits of [the petitioner's] ineffective assistance claim, he must first exhaust all available state-court remedies.").  A claim is exhausted when it has been "fairly presented" to the state courts, i.e., when the petitioner has raised the "substance" of his federal claim in the state courts.  *Bland*, 459 F.3d at 1011 (quoting *Picard v. Connor*, 404 U.S. 270, 275, 278 (1971)) (internal quotation marks omitted).  This "requires more than presenting 'all the facts necessary to support the federal claim' to the state court or articulating a 'somewhat similar state-law claim.'"  *Id.* (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  A "petitioner cannot assert entirely different arguments from those raised before the state court" in his federal habeas corpus petition.  *Id.*

---

[1]     Arguably, Mr. Teniente also raises a claim that the prosecutor committed misconduct by introducing evidence of potential retaliation against jurors by relatives of Mr. Teniente or his victim.  *See* Aplt. Br. at 15–18.  Mr. Teniente did not raise this argument in his habeas petition, however.  *See* Aplt. App. at 24–32 (Pet., filed Jan. 16, 2009).  Accordingly, Mr. Teniente has waived this claim.  *See, e.g.*, *Parker v. Scott*, 394 F.3d 1302, 1327 (10th Cir. 2005) ("Parker raises several other alleged failures of counsel to object at trial, all of which he has waived by failing to assert them in his district court habeas petition.").

But this is exactly what Mr. Teniente has done here. Mr. Teniente argues before this court that his due process rights were violated when the prosecutor introduced evidence of his alleged gang membership. In contrast, before the Wyoming Supreme Court, Mr. Teniente based his prosecutorial misconduct argument on the prosecutor doing the following: (1) introducing the fact that Mr. Teniente's co-defendant was convicted; (2) commenting upon Mr. Teniente's exercise of his right to remain silent; (3) vouching for and criticizing the credibility of witnesses; (4) misstating evidence in closing argument; and (5) improperly questioning defense witness Robert Riojas. Mr. Teniente did not challenge as misconduct the prosecutor's introduction of evidence of gang membership. *See* Dist. Ct. Doc. 6-2 at 19–44 (Aplt. Wyo. Br., filed Jan. 3, 2006). Thus, Mr. Teniente's prosecutorial misconduct claim was not "fairly presented" to the state court and is therefore not exhausted.

Mr. Teniente does argue before this court that his due process rights were violated when the state trial court admitted this evidence of gang activity. Although Mr. Teniente challenged the admission of this evidence before the Wyoming Supreme Court, he did so solely on the basis that this evidence was irrelevant and prejudicial under state evidentiary law; he did not make a federal due process challenge.[2] *See id.* at 45–55. Thus, Mr. Teniente did not fairly

---

[2] To the extent Mr. Teniente reasserts his state evidentiary-law challenge here, it is not a basis for habeas relief even though it was not

(continued...)

present his evidentiary due process claim to the state court and it is likewise

unexhausted. As the United States Supreme Court has explained:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

> . . . Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment. . . . The California Court of Appeal analyzed the evidentiary error by asking whether its prejudicial effect outweighed its probative value, not whether it was so inflammatory as to prevent a fair trial. . . . [T]hose standards are no more than somewhat similar, not virtually identical . . . . [M]ere similarity of claims is insufficient to exhaust.

---

[2]     (...continued)
procedurally defaulted. "Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *see also Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); *id.* at 17 ("It is not enough to note that a habeas petitioner *asserts* the existence of a constitutional violation; unless the federal court agrees with that assertion, it may not grant relief."). "We may not provide habeas corpus relief on the basis of state court evidentiary rulings 'unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results.'" *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (quoting *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000)).

*Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (citations omitted) (internal quotation marks omitted); *accord Hawkins v. Mullin*, 291 F.3d 658, 673–74 (10th Cir. 2002).

Generally, federal courts "should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies." *Bland*, 459 F.3d at 1012. However, if the state court in which petitioner must exhaust his claims "would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review." *Id.* (quoting *Dulin v. Cook*, 957 F.2d 758, 759 (10th Cir. 1992)) (internal quotation marks omitted).

Wyoming procedurally bars a claim from being raised in a post-conviction proceeding if it "[c]ould have been raised but was not raised in a direct appeal." Wyo. Stat. Ann. § 7-14-103(a)(i); *see, e.g.*, *Keats v. State*, 115 P.3d 1110, 1115 (Wyo. 2005) ("Any claim that could have been raised on direct appeal, but was not raised, is procedurally barred from being raised on a petition for post-conviction relief."). We can discern no reason why Mr. Teniente's Fourteenth Amendment due process claims of prosecutorial misconduct and evidentiary error could not have been raised on direct appeal. Thus, under Wyoming law, the claims are procedurally barred.

Moreover, it is too late in any event for Mr. Teniente to seek post-conviction relief, as his judgment and sentence was filed on April 26, 2005, Dist. Ct. Doc. 1-3 at 4–6 (J., filed Apr. 26, 2005), and Wyoming bars petitions "filed

more than five (5) years after the judgment of conviction was entered." Wyo. Stat. Ann. § 7-14-103(d); *see, e.g.*, *Harlow v. State*, 105 P.3d 1049, 1076 n.24 (Wyo. 2005) ("Wyo. Stat. Ann. § 7-14-103(d) provides that a post-conviction relief petition must be filed within five years of the date of conviction."). Thus, Mr. Teniente has procedurally defaulted his Fourteenth Amendment due process claims concerning the evidence of gang membership.

"On habeas review, this court will not consider issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Brown v. Sirmons*, 515 F.3d 1072, 1092 (10th Cir. 2008) (quoting *Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998)) (internal quotation marks omitted). Wyoming's procedural bars to claims not raised on direct appeal or raised in post-conviction petitions filed more than five years after entry of judgment are independent and adequate. *See Phillips v. Ferguson*, 182 F.3d 769, 773–74 (10th Cir. 1999) ("[W]e hold Wyo. Stat. Ann. § 7-14-103(d) to be an 'adequate' state procedural rule."); *Parkhurst v. Shillinger*, 128 F.3d 1366, 1370 (10th Cir. 1997) (characterizing § 7-14-103(d)'s five-year time limit as "adequate and independent"); *see also Skinner v. Abbott*, 141 F. App'x 727, 733 (10th Cir. 2005) ("Wyoming courts have consistently and evenhandedly applied the state law procedural bar to cases raising shackling issues for the first time in a request for post-conviction relief. Therefore, the state court judgment barring

-9-

Skinner's claim is based on independent and adequate state law grounds, precluding our review."); *Lacey v. Ferguson*, No. 98-8071, 1999 U.S. App. LEXIS 14836, at *4–5 (10th Cir. June 29, 1999) (characterizing requirement that claims be raised on direct appeal as "an adequate and independent state ground"); *Stambaugh v. Shillinger*, No. 96-8025, 1996 U.S. App. LEXIS 25392, at *6 (10th Cir. Sept. 27, 1996) (characterizing requirement that claims be raised on direct appeal as an "independent and adequate state procedural rule[] under which Mr. Stambaugh has defaulted").

Mr. Teniente asserts neither cause and prejudice nor a fundamental miscarriage of justice to excuse his procedural default. Accordingly, Mr. Teniente's Fourteenth Amendment due process claims of prosecutorial misconduct and evidentiary error are procedurally barred.

## II. Improper Jury Contacts

During trial, Mr. Teniente's girlfriend approached a female juror in a public restroom, introduced herself, and said that she had just had Mr. Teniente's baby and that "things were really hard." *See Teniente*, 169 P.3d at 519. The juror did not respond to this communication. Instead, she terminated the encounter and immediately reported the incident to the bailiff. When the bailiff notified the court, the court "informed the juror, via the bailiff, that it was comfortable with her continued service on the jury, as long as the juror was also comfortable with continuing." *Id.* The juror indicated that she felt comfortable continuing to

-10-

serve, "but admitted the contact did make her a bit nervous." *Id.* (internal quotation marks omitted).

This incident, however, prompted the jury to later send a note to the court, which read: "During our deliberation some concerns have arose [sic] about the safety and any retaliation of either family, towards any of us or our families. Some of us have been approached by some of the family members. Please advise us of our course of action." *Id.* at 518–19.

Mr. Teniente apparently first became aware of the jury's note during the course of his direct appeal. "At that time, the record was silent as to what, if any, action the court took in response to the note." *Id.* at 519 n.2. The court remanded the case to the trial court "for [the] purpose[] of developing the record regarding the note." *Id.* The trial court subsequently conducted an evidentiary hearing. In the context of that hearing, facts came to light concerning not only the district court's handling of the note, but also facts related to the prior encounter between Mr. Teniente's purported girlfriend and the juror, which provided the impetus for the note.

## A. *Presumption of Prejudice*

Mr. Teniente argues that the Wyoming Supreme Court's decision was contrary to clearly established federal law because it failed to treat the jury contact as presumptively prejudicial as required by *Remmer v. United States* (*Remmer I*), 347 U.S. 227 (1954). *See* Aplt. Br. at 45. We disagree. It is

-11-

possible that the Wyoming Supreme Court's juror-contact analysis adhered to the presumption of *Remmer I*. However, even if it did not, in light of subsequent Supreme Court precedent in effect at the time that the Wyoming Supreme Court ruled on Mr. Teniente's claim, we cannot conclude that the Wyoming Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. Therefore, reasonable jurists could not debate the correctness of the district court's resolution of this claim.

*Remmer I* involved a third-party's communications with a juror and his alleged attempt to bribe the juror. The Supreme Court opined that "[i]n a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed *presumptively* prejudicial . . . ." 347 U.S. at 229 (emphasis added). "The presumption is not conclusive, but the burden rests heavily upon *the Government* to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Id.* (emphasis added).

However, in the context of a juror-bias claim, the Supreme Court in *Smith v. Phillips*, 455 U.S. 209 (1982), later explained that it "has long held that the remedy for allegations of juror partiality is a hearing in which *the defendant* has the opportunity to prove actual bias." *Id.* at 215 (emphasis added). The Court cited and expressly relied upon the reasoning of *Remmer I* for this proposition.

-12-

*Id.* The Fifth Circuit has observed that "[t]his language [of *Phillips*] is difficult to reconcile with a presumption of prejudice warranting rebuttal by the government." *United States v. Sylvester*, 143 F.3d 923, 934 (5th Cir. 1998); *see also United States v. Williams-Davis*, 90 F.3d 490, 496 (D.C. Cir. 1996) ("Of course one might distinguish between juror partiality [in *Phillips*] and private contacts [in *Remmer I*], but, far from doing so, the Court cited *Remmer*, and the attempted juror bribe there, as an *illustration* of the principle it was invoking. But assuring the defendant 'an opportunity to prove actual bias' is out of synch with the *Remmer* presumption; why would a defendant enjoying a presumption in his favor need such an opportunity?").

Principally based upon a reading of *Phillips*,[3] some federal courts—including a few of our sister circuits—have viewed "the Supreme Court . . . [as] hav[ing] backed away" from the holding of *Remmer I* that "any outside influence on the jury was presumptively prejudicial; the burden f[alling] on the government to rebut this presumption." *Sylvester*, 143 F.3d at 933; *see id.* at 934–35 ("reject[ing] the *Remmer* presumption" and "agree[ing] that the *Remmer* presumption of prejudice cannot survive *Phillips* and *Olano*"); *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984) ("We conclude that *Phillips*

---

[3]     At least two circuit courts also have concluded that the Supreme Court's decision in *United States v. Olano*, 507 U.S. 725 (1993), casts doubt on the continuing vitality of *Remmer I*'s presumption. *See Sylvester*, 143 F.3d at 934; *Williams-Davis*, 90 F.3d at 496.

has indeed altered the law concerning unauthorized communications with jurors. . . .  In light of *Phillips*, the burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality.  Prejudice is not to be presumed."); *see also Williams-Davis*, 90 F.3d at 497 (discussing Supreme Court cases, including *Phillips*, and stating, "[t]hus we think the district court was correct under the Supreme Court's and our cases to inquire whether *any particular intrusion* showed enough of a 'likelihood of prejudice' to justify assigning the government a burden of proving harmlessness." (emphasis added) (quoting *United States v. William-Davis*, 821 F. Supp. 727, 738 (D.D.C. 1996))).[4]  Indeed, we have previously alluded to this development.  *See*

_____

[4]  We pause to note that, after *Williams-Davis*, the D.C. Circuit dealt with a juror-contact contention and suggested that there was a "tension" in its cases regarding the ongoing vitality of *Remmer I*'s presumption of prejudice. *United States v. Gartmon*, 146 F.3d 1015, 1028 (D.C. Cir. 1998).  Specifically, the court observed that even after *Phillips*, "many of our cases have continued to recognize the presumption of prejudice and to place the burden of disproving it on the government." *Id.*  The *Gartmon* court determined that it was unnecessary to "resolve this debate" in order to decide the juror-contact issue before it.  *Id.*

We do not believe that the *Gartmon* court's observations undercut the usefulness of *Williams-Davis* in our analysis.  First, the court did not purport to overrule *Williams-Davis* and, indeed, it was not empowered to do so.  *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) ("One three-judge panel, therefore, does not have the authority to overrule another three-judge panel of the court."); *see also Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 753 (D.C. Cir. 2010), *pet. for cert. filed*, 79 U.S.L.W. 3330 (U.S. Nov. 16, 2010) (No. 10-661).  Consequently, *Williams-Davis* is still good law and binding precedent in the D.C. Circuit.  Second, all of the cases cited by the *Gartmon* court to reflect the D.C. Circuit's ongoing adherence to *Remmer I*'s presumption were decided *before* the Supreme Court's decision in *Olano*.  That decision played a significant

(continued...)

-14-

*United States v. Scull*, 321 F.3d 1270, 1280 n.5 (10th Cir. 2003) ("We note that this circuit and others have questioned the appropriate breadth of *Remmer*'s presumption of prejudice rule, postulating the standard should be *significantly narrowed, or replaced altogether*." (emphasis added) (citing *United States v. Greer*, 620 F.2d 1383, 1385 n.1 (10th Cir. 1980))).  We, however, have deemed ourselves obliged to follow *Remmer I*'s presumption "[i]n the absence of Supreme Court authority to the contrary."  *Id.*

In this case, the Wyoming Supreme Court began its analysis of the juror-contact issue by quoting from *Remmer I*.  Specifically, the court quoted *Remmer*

---

[4]     (...continued)
role in *Williams-Davis*'s analysis and holding that *Remmer I*'s presumption was no longer operative.  *See Williams-Davis*, 90 F.3d at 496; *see also supra* note 3.  Whether the cases cited by the *Gartmon* court would have come out the same way (i.e., upholding the *Remmer I* presumption) had they been able to consider the Supreme Court's decision in *Olano* is unclear.  Third, and likely of greatest importance, the focus of our analysis is not on whether those decisions that have backed away from *Remmer I*'s presumption, like *Williams-Davis*, are correct—indeed, we have not sided with them.  *See United States v. Scull*, 321 F.3d 1279, 1280 n.5 (10th Cir. 2003).  Rather, our focus is on the existence of a debate among reasonable jurists of the federal courts with regard to the ongoing vitality of the *Remmer I* presumption, given subsequent Supreme Court developments.  And, in particular, our focus is on the implications of that debate for the question we must decide *infra*—whether the Wyoming Supreme Court's assumed departure from the *Remmer I* presumption resulted in a ruling that was contrary to, or involved an unreasonable application of, federal law.  *Williams-Davis* reinforces that there is in fact a lively debate among federal courts—and, as *Gartmon* suggests, *within* federal courts—concerning the ongoing vitality of *Remmer I*'s presumption.  This debate among reasonable jurists bolsters our conclusion, discussed *infra*, that the Wyoming Supreme Court's ruling on the juror-contact issue—even if it is assumed to have departed from *Remmer I*'s presumption—was neither contrary to, nor involved an unreasonable application of, federal law.

*I*'s language concerning the presumption of prejudice and the government's heavy burden to overcome it. *See Teniente*, 169 P.3d at 519. Then, it claimed to "turn" in part "to a legal principle established" in *Remmer I* "[i]n analyzing th[e] [juror-contact] issue." *Id.* However, the Wyoming Supreme Court also heavily relied upon its own juror-contact jurisprudence, including *Skinner v. State*, 33 P.3d 758 (Wyo. 2001), and *Gunnett v. State*, 104 P.3d 775 (Wyo. 2005). It noted that *Skinner* cited to *Phillips*, and it interpreted *Skinner* as holding that "a mere showing of improper communication is not sufficient—prejudice must also be *shown*." *Teniente*, 169 P.3d at 519 (emphasis added). Then, the Wyoming Supreme Court quoted at some length from *Gunnett*, where it previously had observed that in the context of alleged improper juror contact, "many courts have abandoned the presumption mechanism in favor of common sense inquiries into the likely effect of the information or influences on the average juror." *Id.* at 520 (alteration in original) (quoting *Gunnett*, 104 P.3d at 781) (internal quotation marks omitted). The Wyoming Supreme Court in *Teniente* thus held that "[h]ere, [the] lessons from both *Skinner* and *Gunnett* undeniably hold true . . . [and] we confidently conclude that the district court's actions regarding the note were altogether appropriate." *Id.*

Because the Wyoming Supreme Court expressly acknowledged the *Remmer I* presumption and claimed to rely in part upon *Remmer I*'s holding, it is possible that the Wyoming Supreme Court upheld the trial court's handling of the

-16-

juror-contact issue under the *Remmer I* presumption. Yet, we recognize from a careful review of the court's analysis—which relied upon its opinions in *Skinner* and *Gunnett*—that it is more likely that this did *not* take place. That, instead, the Wyoming Supreme Court deviated from a strict application of *Remmer I*'s presumption "in favor of [a] common sense inquir[y] into the likely effect of the information or influences on the average juror." *Id.* (quoting *Gunnett*, 104 P.3d at 773) (internal quotation marks omitted).

However, even if that were true, we would not conclude that the Wyoming Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. It would not have been unreasonable for the Wyoming Supreme Court to have interpreted the subsequent Supreme Court case law—most notably, *Phillips*—as "work[ing] a substantive change in the law," *Pennell*, 737 F.2d at 532 n.10, and authorizing, at the very least, a more fluid approach, without a presumption, that "focus[es] on the specific facts of the alleged contact," *Williams-Davis*, 90 F.3d at 496–97. The reasonableness of "question[ing] the appropriate breadth of *Remmer*'s presumption of prejudice rule," and "postulating [that] the standard should be significantly narrowed, or replaced altogether," is underscored by the significant number of federal courts that have done just that. *Scull*, 321 F.3d at 1280 n.5; *see Sylvester*, 143 F.3d at 934 ("[T]he trial court must first assess the severity of the suspected intrusion [on the jury]; only when the court determines that prejudice is

-17-

likely should the government be required to prove its absence."); *Pennell*, 737 F.2d at 532 ("In light of *Phillips*, the burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed."); *see also Williams-Davis*, 90 F.3d at 496–97 ("Although often referring to *Remmer*, this court has in fact not treated the supposed 'presumption' as particularly forceful, but rather has accepted the necessity of focusing on the specific facts of the alleged contact, and, as a result, has found broad discretion in the trial court to assess the effect of alleged intrusions.").

Just because we have felt obliged to adhere to the presumption of *Remmer I* does not mean that a contrary view of the dictates of Supreme Court case law is unreasonable. It should not be forgotten that it is *that* law—and not ours—that defines the boundaries of clearly established federal law for AEDPA purposes. *See, e.g.*, *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008) ("[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*."). Therefore, ultimately we cannot conclude that the Wyoming Supreme Court's decision with regard to the juror-contact issue was contrary to, or involved an unreasonable application of, clearly established federal law. Consequently, reasonable jurists could not debate the correctness of the district court's resolution of this claim.

### B. Adequacy of Hearing

Mr. Teniente argues that the hearing on the improper jury contact was insufficiently comprehensive, contrary to the requirement of *Remmer v. United States* (*Remmer II*), 350 U.S. 377 (1956), that "the entire picture should be explored." *Id.* at 379. Specifically, he asserts that the state trial court failed to consider the content of the jury's note, the impact on the other jurors, and the "atmosphere of fear and tension" that existed at trial. *See* Aplt. Br. at 28, 31, 34–35, 38–39, 43–45. We cannot conclude that the Wyoming Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.

Perhaps the most fundamental problem with Mr. Teniente's argument is that, even under *Remmer II*, it is reasonable to accord the trial court considerable discretion in determining whether any improper juror contact was prejudicial to the defendant. *See Scull*, 321 F.3d at 1280 ("Pursuant to *Remmer*, we normally review for abuse of discretion the district court's decision to hold a hearing and its determination whether any jury taint requires a new trial."); *id.* at 1278 ("The district court has 'broad discretion in determining how to handle allegations of juror bias.'" (quoting *United States v. Bornfield*, 145 F.3d 1123, 1132 (10th Cir. 1998))); *accord United States v. Williams*, 822 F.2d 1174, 1190 (D.C. Cir. 1987) ("[T]he trial court should have considerable latitude in determining the methodology to be employed."), *superseded on other grounds by amendment to*

-19-

*the Guidelines, as recognized in United States v. Caballero*, 936 F.2d 1292, 1298–99 (D.C. Cir. 1991); *United States v. Coleman*, 805 F.2d 474, 482 (3d Cir. 1986) ("[T]he district court has discretion to determine what procedures are necessary for a thorough examination of possible prejudice."). Mr. Teniente has not cited to any legal authority that even suggests a contrary view of the import of *Remmer II*. Furthermore, at least two of our sister circuits have suggested that the Supreme Court's post-*Remmer II* decision in *Olano* has clarified that *Remmer II* does not impose particular requirements for the conduct of hearings to examine juror bias. *See Williams-Davis*, 90 F.3d at 496 ("[T]he Court [in *Olano*] appeared to see *Remmer* largely as a case illustrating the importance of *weighing the likelihood* of prejudice rather than as a source of rigid rules."); *see also Sylvester*, 143 F.3d at 934 (noting that *Williams-Davis* "has understood *Olano* as reconfiguring *Remmer*" and adopting a "rule" involving a case-specific inquiry for prejudice, which "comports with our longstanding recognition of the trial court's considerable discretion in investigating and resolving charges of jury tampering"). We cannot conclude that these circuits' interpretation of *Olano* is unreasonable. Under this deferential standard, the Wyoming Supreme Court's decision to uphold the trial court's handling of the juror-contact issue was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

Mr. Teniente contends that the jury's note suggests "the possibility of multiple contacts" with the jury, which were not adequately explored. Aplt. Br. at 44. But Mr. Teniente's counseled state-court filings did not complain of any other juror contacts. *See* Dist. Ct. Doc. 6-2 at 11–12, 14, 17–18; Aplt. Wyo. Reply Br. at 5–12 (filed Dec. 4, 2006). Therefore, arguably, Mr. Teniente has failed to preserve this argument for our review. However, even if he has, the argument fails. Mr. Teniente questions the evidentiary foundation of the state trial court's factual determination that "the specific incident that gave rise to the note was that a female juror at some point was approached in an apparent and very fleeting attempt by the defendant's girlfriend to garner some sympathy for him." Aplt. App. at 154 (Findings & Conclusions Pursuant to Directive of Supreme Ct., filed Oct. 20, 2006). However, Mr. Teniente marshals no evidence to establish by clear and convincing proof that this factual determination is wrong. *See* 28 U.S.C. § 2254(e)(1). In light of this factual finding, it would be entirely reasonable for the state trial court not to explore the possibility of other contacts with jurors.

Lastly, we conclude that Mr. Teniente has not adequately developed his argument that the state trial court "failed to take into account the atmosphere of fear and tension, fostered by the prosecution, in which any contacts occurred," Aplt. Br. at 44; therefore, we decline to consider it. *See*, *e.g.*, *House*, 527 F.3d at 1029 n.16 (citing *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007)).

Thus, Mr. Teniente has failed to establish that the Wyoming Supreme Court's decision to uphold the trial court's handling of the hearing regarding the improper juror-contact issue was contrary to, or involved an unreasonable application of, clearly established federal law.

## CONCLUSION

For the foregoing reasons, we cannot conclude that the Wyoming Supreme Court's rulings in this case were contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, reasonable jurists could not debate the correctness of the district court's resolution of Mr. Teniente's petition. Therefore, we **DENY** Mr. Teniente's application for a COA and **DISMISS** his appeal.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge